People *v.* Arnold.

# THE PEOPLE *v.* ARNOLD.

I⊤ is better for the Court below to adhere strictly to the provisions of the statute in respect to the mode of trial in criminal cases, than risk a reversal of the judgment by a deviation from the specific modes of procedure prescribed, even when the deviation does not seem to it material.

Where defendant is held to answer before the finding of the indictment, an objection to the mode of drawing the names of grand jurors must be taken on their being impanneled.

People *v.* Arnold.

The statutory provision that exception to the grand jury must be made at a particular time, is constitutional. The Legislature have the right to prescribe rules of practice in criminal or civil cases, and among such rules, are provisions as to the time and mode of excepting to irregularities of proceeding.

Indictment for murder. Plea, self defense. Testimony conflicting as to facts occurring at time of homicide. M., a witness for prosecution, testified that he was present August 24th at a difficulty between defendant and deceased, in the course of which defendant discharged a double barreled shot gun at deceased, who fell forward; that immediately thereafter witness approached deceased, and saw lying on the ground, about six feet forward of him, a pistol, which witness had previously seen in deceased's possession. Witness then detailed the circumstances immediately connected with the difficulty, in which he himself, armed with a pistol, took part with deceased against defendant; and then stated that the pistol he saw lying on the ground, deceased borrowed from C. some time before August 24th; that C. had given the pistol to deceased, who said he would clean it; and that he (witness) had often, since then, and before August 24th, seen the pistol in deceased's possession. Defendant's counsel then asked witness this question: "At the time C. gave the pistol to Sweeney, (deceased) was anything said by S. with reference to using the pistol against the defendant?" Objected to and ruled out as irrelevant and incompetent, unless evidence was produced tending to show that the thing said had come to the knowledge of defendant. *Held*, that the Court erred; that the evidence was admissible; that the declaration of deceased made at the time of procuring the weapon was part of the *res gestæ*, and illustrative of the transaction; that it showed the purpose for which the weapon was procured, and that this purpose was an item of proof upon the question, which of the two parties first assaulted—this being the point to which the testimony was offered.

The mere fact that one man threatens to kill another does not justify the latter in killing the former. The threats must be shown to have been communicated to the accused, before they are admissible as evidence for him for any purpose— and then the effect and bearing of the testimony should be explained by the Judge to the jury, before the case is finally submitted to them.

But where a rencounter occurs between two persons, one of whom is killed, and the witnesses as to the difficulty differ, or the circumstances are equivocal as to which one of the two commenced the affray, then the fact that one of the parties had previously procured a weapon for the avowed purpose of using it against the other—the weapon being found at the place of the affray—is a circumstance tending to show that the purpose was fulfilled, and hence is proper for the consideration of the jury.

Generally, when the fact of a homicide is shown, defendant must show by a preponderance of testimony that the killing was justifiable; but this rule is subject to the qualification that where the testimony of the prosecution leaves a doubt as to the character of the homicide—as whether justifiable or not—then the benefit of the doubt is to be given to the prisoner.

Whether an instruction giving the general rule—without the qualification—be proper or not, depends on the facts in proof, and the charge would be right or wrong according to the circumstances of the given case.

APPEAL from the Seventh District.

Indictment for murder.    Upon being arraigned, defendant moved to set aside the indictment on the ground that the grand jury was not drawn by, and the drawing thereof was not had in the presence of, the officers designated by law.    Overruled; exceptions.

Defendant was convicted of manslaughter, and appeals.

*John Currey*, for Appellant.

1. The drawing of the grand jury not being had in the presence of the officers designated by law, that body was illegally constituted, and the indictment found by it is void, *ab initio*.    And, although defendant had been held to answer, before the finding of the indictment, still he was not required to challenge a grand jury thus illegally constituted, and the objection could be taken by motion to set aside the indictment on arraignment.    (Wood's Dig. 284, sec. 182, sub. 3; Id. 291, secs. 278–279; Id. 510, sec. 5, as amended, Laws 1859, 184; *Joyce* v. *Joyce*, 5 Cal. 449; 8 Bac. Ab. Bou. Ed. 671; *People* v. *Thurston*, 5 Cal. 69; Const. art. 1, sec. 8; *Taylor* v. *Porter*, 4 Hill, 145; Smith's Com. secs. 593–596.)

2. The question put to the witness Morris was proper, as what deceased said when he procured the pistol would tend to show the *animus* and *intention* of deceased with respect to the accused.    The principal fact which defendant sought to establish was, that the conduct and bearing of the deceased at the time he was injured, demanded of defendant the means employed, as a necessary defense of himself from the deadly assault of deceased; and such fact could be established as properly by proof of circumstances indicative of the deceased's motive and intention, from which the fact so sought to be proved, would be presumed, as it could by direct evidence thereof.    The conduct of the deceased as the assailant at the fatal meeting of the parties, may have induced the act of the accused, as a necessity for the preservation of his own life.    (Wharton's Cr. L. secs. 635–649–850; Id. secs. 1019, 1026; 2 Russell on Crimes, 777; 1 Stark. Ev. secs. 13–14; Foster's Crown Law, 273; Burlamaqui on Natural Law, 24; Stark. Ev. part 1, sec. 12: *People* v. *Shorter*, 2 Comst. 197–198; *Pritchet* v. *The State*, 22 Ala. 40; *Dukes* v. *The State*, 11 Ind. 566–567; 2 Wat. Archb. 225, *et seq.*)

People *v.* Arnold.

*Thos. H. Williams, Attorney General,* for Respondent.

1. Appellant's first point is answered by secs. 279, 280, Crim. Prac. Act; *People* v. *Freeland* (6 Cal. 96); *People* v. *Beatty* (114 Id. 566).

2. Evidence of previous threats made by deceased against the prisoner, is inadmissible unless it appear that such threats were communicated to or known by the prisoner and induced the homicide.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

Several errors are assigned:

1. The first assignment is error in the impanneling of the trial jury; but as, in all probability, the same cause of objection will not again occur in the case, it is not deemed necessary to consider it. We merely remark in this connection, that it is better for the Court to adhere strictly to the provisions of the Statute in respect to the mode of trial, than risk a reversal of the judgment by a deviation from the specific modes of procedure prescribed, even when the deviation does not seem to it material.

2. Error in the mode of drawing the names of the grand jurors. But this point cannot be urged here. This we have held in several cases. (See *People* v. *Beatty,* at the last term.) The defendant was held to answer before the finding of the bill. He was then bound to make his objection to the grand jury on their being impanneled. It is argued that the defendant cannot, by the Constitution, be tried unless and until indicted by a grand jury; and that this means a grand jury constituted according to law; and that a bill by a grand jury not so constituted is a nullity. But the answer is, that the Legislature may constitutionally prescribe rules of practice in criminal or civil cases; and that among these is the provision as to the time and mode of excepting to irregularities of proceeding; and it is ordained that exception to the grand jury shall be made at a particular time. In many of the States, exceptions to particular jurors or to the panel are required to be made by plea in abatement, and cannot be heard unless so made; yet the same constitutional provisions, in substance, obtain in those States, and the same argument would hold that this practice, long acquiesced in and upheld without objection by the Courts, is unconstitutional.

3. The main question arises on the admissibility of certain testimony.

The defendant was indicted and tried for feloniously killing one John M. Sweeney. His plea was that the homicide was in self defense. The testimony was somewhat conflicting as to the facts occurring at the time of the killing, or, at least, was claimed to be so by the defendant. On the trial, one Lawrence Morris was a witness for the prosecution, and among other things testified that he was present on the twenty-fourth of August, 1859, at a difficulty that then occurred between this defendant and Sweeney, in the course of which the defendant discharged a double barreled shot gun at Sweeney, the charge from which took effect in his thigh, whereupon Sweeney fell forward; that immediately thereafter, the witness approached Sweeney, and saw lying on the ground, about six feet forward of him, a pistol, which the witness had previously seen in Sweeney's possession. The witness then proceeded to detail circumstances immediately connected with the difficulty, in which the witness himself, armed with a pistol, took an active part with Sweeney against the defendant and his sons; and he then says the pistol that he saw lying on the ground after Sweeney fell, Sweeney borrowed from Mr. Cordes, some time before the twenty-fourth of August, 1859; that Cordes had, in the presence of witnesses, given the pistol to Sweeney, who said he would clean it; and that he (the witness) had often since that time, and before the twenty-fourth of August, 1859, seen said pistol in Sweeney's possession.

The defendant's counsel then asked this witness the following question: "At the time Cordes gave the pistol to Sweeney, was anything said by Sweeney with reference to using the pistol against the defendant, Philander Arnold?"

To this question the counsel for the people objected, on the ground that it was irrelevant and incompetent.

The Court decided that the testimony was inadmissible, unless evidence was produced tending to show that the thing said had come to the knowledge of the defendant, and sustained the objection; to which decision the defendant excepted.

We do not understand that the testimony rejected was offered for the purpose of proving a threat on the part of the deceased. It is clear that the mere fact that one man threatens to kill another is no sort of justification to the latter to kill the former. The threats must be shown to have been communicated to the accused before they are admissible for any purpose (and then the effect and bearing of the testimony should be explained by the Judge to the jury before the case is finally

submitted to them). In this case there is no pretense that this threat, if there was any, was so communicated. The ground taken by the defendant's counsel is, that the question presented to the jury by the proofs was the question of fact as to which one of these parties first assaulted the other; and the defendant contended that the deceased was the aggressor in the fatal rencounter, and had placed defendant in danger of his life, from which peril he could only extricate himself by slaying his assailant. The counsel contends that any fact which con duces to show that this theory is true, was legitimate evidence, and that this fact of the declarations of Sweeney at the time of borrowing the pistol does so tend. The object of a trial is to elicit the real state of the transaction, and the rules which govern or determine the introduction of testimony have relation to this end. These rules are not mere arbitrary, conventional regulations; they are founded in reason and good sense. Generally speaking, whatever has a tendency to prove a material part of the issue is admissible. This proof may be direct or inferential, circumstantial or positive. It may be more or less conclusive, but if it be relevant, this want of conclusiveness is no bar to its introduction. The question in this case, as made by the prisoner, was the fact of the assault by the deceased; and in a conflict of proofs, the solution of this fact was or might have been dependent upon a variety of considerations; and these were to be passed upon, and the conclusions reached by the jury as the exclusive arbiters of this question. The defendant was entitled to urge all the considerations conducing to establish his theory and to disprove that of the prosecution, which could be fairly presented to the jury. He had a right to urge as well expressly proven facts, as the probabilities and inferences to be drawn from the conduct of the parties connected with the occurrence. He did urge, as we infer from the record, that this assault was not made by him, but that it was made by Sweeney; and to prove this, he proposed to show that Sweeney had armed himself with this pistol; that he had borrowed it, and that it was found at the place of the rencounter. He was permitted to show these facts, but he proposed to show a further fact, and that was, that at the time of Sweeney's getting the pistol, he declared what he meant to do with it. This declaration, being made at the time of procuring the weapon, was a part of the *res gestæ*, and illustrative of the transaction. It shows, in other words, the purpose for which the weapon was procured. This leads us to the inquiry, whether the fact that A procures a weapon for a particular purpose

conduces at all to show, in a question of conflicting proofs as to the manner in which he used it, what that manner was. We apprehend that if a man goes into a house, borrows a gun, goes out with it, saying that he means to use it on another, and a rencounter happens between him and that other, and the witnesses who see the difficulty differ, or the circumstances are equivocal as to which one of the two commences the affray, that some light might be thrown upon this question conducing to or towards its solution, by the proof of these facts as to A's procuring it and his motives in doing so. The jury might possibly, with some reason, conclude that as the weapon was procured for this purpose of assault on another, that purpose was fulfilled; that the assault, in other words, was made in pursuance of the intended purpose when the weapon was procured, and especially if other facts in corroboration of this conclusion existed. It is true there would be nothing conclusive in this. But the fact of the conclusiveness of this proof to establish the proposition which it is introduced to prove, is not the decisive question; that question is, whether this item of fact be a matter *proper to be considered* by the jury in arriving at their conclusion upon this mooted point. And we have no doubt that it is; that it may enter into the deliberations of the jury with all the other facts, as a matter to be weighed by them with the rest of the proofs.

4. We do not think it necessary to examine the point as to the instructions of the Court. The charge objected to, as we understand it, is this: That when the fact of a homicide is shown, then it is incumbent upon the defendant to show by a preponderance of testimony that the killing was justifiable. The authorities seem to hold this as a general proposition; but this proposition is subject to the qualification that where the testimony of the prosecution leaves a doubt as to the character of the homicide—as whether justifiable or not—then the benefit of the doubt is to be given to the prisoner. But the propriety of such an instruction as that given must necessarily be dependent upon the facts in proof, and the charge would be right or wrong according to the circumstances of the given case. We have not all the facts before us so as to enable us to pronounce upon this matter.

For the error indicated, the judgment is reversed and the cause remanded for a new trial.