## Thomas Johnson v. The State.

1. Uncommunicated Threats in Cases of Homicide. *When admissible in evidence.*
   Where the testimony leaves it doubtful which was the aggressor, recent threats of the deceased against the accused, although never communicated to the latter, are admissible as tending to show the character of the killing.

2. Same. *When inadmissible.*
   Such threats are not admissible, if the evidence shows an assassination.

ERROR to the Circuit Court of Yazoo County.

Hon. S. S. CALHOON, Judge.

*Hudson & Hudson,* for the plaintiff in error.

The uncommunicated threats were admissible in evidence. *Keener* v. *State,* 18 Ga. 194; *Holler* v. *State,* 37 Ind. 57; *Cornelius* v. *Commonwealth,* 15 B. Mon. 539; *Campbell* v. *People,* 16 Ill. 18; *Stewart* v. *State,* 19 Ohio, 302; *Dukes* v. *State,* 11 Ind. 557; *Pfomer* v. *People,* 4 Park. Cr. 558.

*George E. Harris,* Attorney-General, for the State.

The threats were inadmissible. *Dyson* v. *State,* 26 Miss. 362; *Wesley* v. *State,* 37 Miss. 349; *Evans* v. *State,* 44 Miss. 762; *Harris* v. *State,* 47 Miss. 318; *Rippy* v. *State,* 2 Head, 217; *State* v. *Scott,* 4 Ired. 409.

SIMRALL, C. J., delivered the opinion of the court.

Thomas Johnson was tried and convicted of the murder of Hood Smith. There was no direct evidence that Johnson committed the homicide except his own statement, proved on the trial. Johnson and Smith were tenants of E. T. Clark, and occupied houses contiguous to each other. Mr. Clark, in his testimony, stated that while at breakfast on the 10th day of October, 1876, he heard the report of a gun, and immediately went to the front of his house, where he could see the residence of the deceased Smith, distant about one hundred and fifty yards. He saw the smoke of a gun in front of Hood Smith's house, ten or fifteen yards from the wood-yard of Smith, passing over the cotton stalks, in a patch of rank cotton, near the wood-pile. He went to the place, and found Smith shot through the head with buckshot, and dead, having an ax-helve tightly grasped in his hand. He examined for tracks, but saw none. He said further, that Smith, two or three days before this, had gone to the field of Johnson and shot him with buckshot, wounding him badly in the hand and slightly in the body, and that just after the shooting, and while Johnson was fleeing, Smith said to him, that he (Smith) would kill him (Johnson) if he ever laid eyes on him again. The defendant introduced several witnesses, and offered to prove by them, that some three days before his death Hood Smith shot at and wounded the

accused, who fled to save his life, and then, in the hearing of Johnson, said he would kill him if he ever laid eyes on him; that, at the time of this shooting, there was no quarrel between Smith and Johnson, or words spoken, except as above; and that Smith, on that day and every day thereafter until he was killed, declared his intention to kill Johnson whenever and wherever he saw him. The defendant admitted that he could not prove that these threats had been communicated to Johnson, save the one which Johnson heard. On the objection of the district attorney, the court refused to permit the testimony to go to the jury.

Wharton, in his work on Criminal Law, § 1027, thus states the rule: "Where the question is as to what was the deceased's attitude at the time of the fatal encounter, recent threats may become relevant to show that this attitude was one hostile to the defendant, even though such threats were not communicated to the defendant." In *Wiggins* v. *People*, 93 U. S. 465, the question was elaborately considered by the Supreme Court of the United States, and the rule as stated by Wharton accepted as true. The testimony is not relevant, in the opinion of the court, to show the *quo animo* of the defendant, "but it may be relevant to show that, at the time of the meeting, the deceased was seeking the defendant's life." This is supposed to be a modification of the earlier doctrine. The competency of the testimony is discussed in *Stokes's Case*, 53 N. Y. 164; *Keener's Case*, 18 Ga. 194; *Campbell's Case*, 16 Ill. 17; *Holler's Case*, 37 Ind. 57; *Arnold's Case*, 15 Cal. 476; *Scroggins's Case*, 37 Cal. 676. In the case of Wiggins, *ubi supra*, the court went into a careful examination of the testimony, to see whether any conduct of the deceased at the time of the homicide warranted the admission of the testimony. So in *Stokes's Case*, the relevancy of the testimony was put on the ground mainly, "that evidence had been given, making it a question for the jury whether the case was one of excusable homicide, upon the ground that the act was perpetrated by the accused in defending himself against an attempt by the deceased to murder or inflict some great bodily injury upon him; and the further question, whether it was not perpetrated in resisting an attack made upon him by

the deceased, from which he had reasonable ground to appre-
hend a design to murder or inflict upon him some great bodily
injury." In *Keener's Case, ubi supra,* the testimony of the
witness Crosby was held competent, because it conduced to
prove, in connection with other evidence, the purpose with
which Reese (the deceased) resorted to the brothel on Mc-
Intosh Street the night of the homicide, and that his manner
and conduct corresponded with that purpose. The threats
of Reese referred to were to the effect that he had made
Keener leave the brothel two or three times, and that if he
ever crossed his path he would kill him. They were made the
Friday night before the killing. In *Arnold's Case, ubi supra,*
the offer was to show the declarations of the deceased, at the
time he got the pistol, as to the use he intended to make of it.
The court put the question in this form: "Whether the fact
that A. procures a weapon for a particular purpose conduces
at all to show, in a question of conflicting proofs as to the
manner in which he used it, what that manner was?" And
answered it by an illustration: "If a man goes into a house,
borrows a gun, goes out with it, saying that he means to use it
on another, and a *rencontre* happens between him and that
other, and the witnesses who see the difficulty differ, or the
circumstances are equivocal as to which of the two commences
the affray, — that some light might be thrown upon this ques-
tion conducing to or towards its solution by the proof of these
facts as to A's procuring it, and his motives in doing so."

The testimony under consideration is relevant and pertinent
where it may aid, as a circumstance, in determining, in connec-
tion with other facts, whether the homicide is excusable or
not; as when the evidence fairly raises the question which
was the aggressor. There the proof that the deceased had
made serious threats, shortly before the *rencontre,* may be con-
sidered by the jury for the purpose just indicated.

To justify a homicide on the plea of self-defence, the danger
must either be actual, present and urgent, or the homicide must
be committed under such circumstances as will afford reason-
able ground for the accused to apprehend a design to carry into
effect such purpose, and imminent danger of its accomplishment.
Fear, apprehension or belief, sincerely entertained, that another

designs to take his life, will not excuse the killing of the former by the latter. *Wesley's Case,* 37 Miss. 327, 349. On the same subject in *Dyson's Case,* 26 Miss. 362, 388, it is said, " First, That, in order to justify killing, there must be some *overt* act, indicating a present intention to kill the party or to do him some great personal injury. Second, That the danger of such design being accomplished must be imminent ; that is to say, immediate, pressing and unavoidable at the time of the killing. Third, The mere fears of a design to commit a felony or to do some great personal injury to the party, though honestly entertained, unaccompanied by any overt act indicating a design immediately to commit the felony, or to do the injury, will not justify the killing." In *Evans's Case,* 44 Miss. 762, 773, it is repeated that " the danger to life or of great personal injury must be imminent, present at the time, of the killing, real or apparent, and so urgent that there is no reasonable mode of escape except to take life." In *Newcomb's Case,* 37 Miss. 383, 400, the accused offered to prove that, six or eight weeks before the killing, he had been cruelly beaten by the deceased, and his declaration afterwards, " that he had not killed the accused, but would do so if he ever crossed his path." It was admitted that the threats had never been communicated to the accused. The testimony was held to have been properly excluded, because " it did not appear from the evidence that the deceased made any hostile demonstration against the accused at the time of the killing, nor even that the threats which he had previously made against the accused were known to the accused." The court rejected testimony as to the former beating and the threats, as not warranting or justifying the accused in acting on the belief that his life was in danger at the time of the killing. Such belief will not, as said by Chief Justice Ruffin in *Scott's Case,* 4 Ired. Law, 409, 415, relieve the homicide from its felonious character of murder, unless the deceased is making some attempt to execute his design, or is in an apparent situation to do so. So in *Head's Case,* 44 Miss. 731, 754, it was said : " A fear or apprehension, arising from previous threats, which have been communicated, affords no excuse, none whatever, unless at the time of the killing an effort was being made to carry the threat into execu-

tion, and a necessity, apparent or real, existed at the time to slay in order to prevent it." In *Evans's Case*, 44 Miss. 774, the court said, if the previous threat (which had been excluded) had been before the jury, it would have had no influence on the verdict, "unless there was testimony that the deceased, at the time of the killing, sought a deadly conflict with the accused, or was making some demonstration towards the accomplishment of his threat."

Let us test, in the light of these authorities, the competency of the rejected evidence. Did a question arise on the evidence, which party, the accused or the deceased, was the aggressor? Was there any testimony tending to show a conflict and combat, — that the deceased was doing any thing, making any demonstration threatening, hostile or dangerous to the accused, or that he was in a situation to do so? Rather does not the evidence show that the accused had concealed himself in the rank cotton with a shot-gun, and that he fired when in no danger, real or apparent? Nothing, as we have seen, relieves the homicide of a felonious character, on the plea of self-defence, except some overt act or conduct at the time of the killing, evincing a design to kill or do some great bodily injury, and a present real or apparent danger from the conduct of the deceased that it will be accomplished. If threats are known to the accused, he will be justified in resisting any attempt to put them in execution. But he cannot slay on the mere fear or belief that they may be carried out, unless some act evincing the purpose is done. The only safe rule on the subject sanctioned by the best-considered cases is to test the relevancy and competency of the testimony by the character of the case as developed in the evidence. If A. arms himself with a gun, and declares at the time that he will kill B. on sight, and shortly thereafter A. comes to his death at the hands of B., such declaration would be competent, with other facts, for the jury. If A.'s gun was found with his body, though nobody saw B. fire the fatal shot, the inference would not be violent that he was endeavoring to accomplish his purpose.

Whether recent uncommunicated threats are relevant or not, depends on the circumstances of each case. If the homi-

cide is deliberate, evincing preparation, as by lying in wait and surprising the adversary, threats are not pertinent or relevant, and do not tend to excuse or justify. But where death ensues from a conflict, and a question is raised by the evidence who was the aggressor, and whether the accused may not have acted in self-defence, recent threats may aid the jury in coming to a satisfactory conclusion. Such we understand to be the reasonable rule, illustrated, with more or less clearness, in the cases referred to.

There being no eye-witness to the killing of Smith by the accused, if there had been circumstances in evidence showing a struggle and combat between the parties, the threats offered to be proved would have been relevant, and, in the light afforded by these circumstances, might have aided the jury in determining who brought on the conflict. But the case in proof to the jury is, that the accused procured a shot-gun from a friend, and discharged it from a cover near the house of the deceased, when the latter, in all probability, was not aware of his presence, and when he was not in a situation to do him serious bodily harm. We doubt not that Johnson took the life of Smith because of the fear and apprehension produced by the threats which Smith uttered in his hearing only three days before. It has been the law from the beginning until now, that fear or apprehension that threats will be carried into action is no excuse. The Circuit Court did right in excluding them.                *Judgment affirmed.*

CHALMERS, J.:

The importance of the principle discussed, and the fact that, for the first time in this State, uncommunicated threats are declared to be admissible under some circumstances, induce me to add a few words of concurrence in the views expressed on behalf of the court by the Chief Justice.

Threats by the party slain, of which the accused was ignorant at the time of killing, could have no effect upon his mind or actions, and are, therefore, inadmissible in explanation or justification of them; but they may, in the absence of proof showing the attitude of the deceased, throw much light upon the acts of the latter, and, therefore, under such circumstances,

should be heard by the jury. I mean that, wherever the testimony leaves it doubtful whether the attack was made by the deceased or the prisoner, the threats of the former, whether communicated or not, should be admitted in evidence, not as constituting· of themselves any defence of the homicide, but as tending to show whether or not it was an act of self-defence. Uncommunicated threats may be admitted in evidence, therefore, even where there were witnesses to the killing, if their testimony leaves it doubtful who began the deadly encounter. It was on this principle that they were admitted in *Wiggins's Case*, 93 U. S. 465. I do not understand Mr. Justice Clifford, in his dissenting opinion, to deny their admissibility where the testimony fails to show the acts and attitude of the deceased, but only to insist that there was no such failure of proof in that case. Under the principle announced, uncommunicated threats will ordinarily be admissible where there were no witnesses to the killing; and this was the case in *Stokes's Case*, 53 N. Y. 164. But they will not be admissible, even in such a contingency, if the circumstances show an unmistakable case of lying in wait and assassination. As they will be excluded where living witnesses negative any assault by the deceased, so they will be where undisputed facts demonstrate the same thing.

Believing that the proof unmistakably shows a clear case of lying in wait and assassination, I think there was no error in the exclusion of the threats.

CAMPBELL, J., concurred.