WILLIAM JOHNSON *v.* THE STATE.

1. CRIMINAL LAW. *Homicide. Evidence of uncommunicated threats.*
    Evidence of previous uncommunicated threats is admissible in cases where
    it is doubtful who began the difficulty, as tending to solve the doubt.

2. SAME. *In what cases the evidence is doubtful.*
    The question as to who is the aggressor is *doubtful* in the meaning of this
    rule, when there is a conflict of testimony upon that point.

3. SAME. *Where party making threat is aggressor.*
    Such evidence is also admissible when it is clearly shown that the de-
    ceased, and not the accused, was the aggressor, in order to interpret the act
    and motive of the deceased, and the purpose with which the attack was
    made.

APPEAL from the circuit court of Holmes county.

HON. C. H. CAMPBELL, Judge.

Appellant was indicted and tried for murder. He was con-
victed of manslaughter, and appeals.

The opinion of the court is confined to the consideration of the
single instruction set out therein.

*Hooker & Wilson,* for appellant.

*T. M. Miller,* attorney-general, for the state.

The cause was argued orally by *G. A. Wilson,* for appellant, and
*T. M. Miller,* attorney-general, for the state.

COOPER, J., delivered the opinion of the court.

This case furnishes another illustration of the danger of multi-
plying instructions in the trial of criminal causes. The facts given
in evidence were conflicting but not complicated. According to
the witnesses for the state, the appellant sought the deceased when
he was quietly at work upon his own premises, and in malice arising
from an old difficulty, murdered him as he sought safety in flight.
According to the testimony of the defendant and his other witnesses,
it was shown that the parties had been unfriendly and that deceased
had made threats to kill appellant; that appellant while returning
to his home was called by the deceased into his field, and a contro-

versy having arisen the appellant sought to retire, when deceased made demonstrations of attacking him with deadly weapons, whereupon, and in self-defense, he fired upon and killed him. In determining the question of guilt or innocence under such circumstances, it would seem that but little aid could be afforded by instructions. But the record shows that the state asked for and obtained fifteen charges. One of them is erroneous, and must result in reversing the judgment. Though it probably exercised no influence in securing the verdict, we must assume that it was influential. The defendant, as we have said, testified that without any attack having been made by him, the deceased committed an overt act evidencing an intention to assail him with a deadly weapon, and that in protection of his life he slew him. Having given testimony of an overt act by the deceased, the accused was permitted to introduce the testimony of several witnesses, that a few days before the killing the deceased had made threats to kill the accused, and had exhibited a pistol which he declared he would use in their execution. But, at the instance of the state, the court charged the jury that "No mere spoken words by Sutherland previous to the time of the killing afforded justification or excuse for his being killed. Nor can any threats of Sutherland, if such were proven, be considered by the jury in making up their verdict, unless from all the evidence they have a reasonable doubt as to who began the conflict in which Sutherland was killed. In that event, they may consider the threats, if proven, along with all the evidence in the case."

This instruction denied to the defendant the advantage of having the previous threats of the deceased considered by the jury as a part of the whole case submitted to its decision. The jury was directed not to consider this evidence, if without it a clear conclusion could be reached as to who began the difficulty. Upon *all* the competent evidence introduced by the state, and a *part* of that for the defense, a material vital inquiry was to be solved. If the conclusions so reached should be against the accused, he was to be denied all benefit of the excluded facts. So also, if it should be clearly in his favor, for it was to be considered by the jury only if upon the other evidence it should appear to be reasonably doubtful

who began the difficulty.  Upon the partial preliminary inquiry sub-
mitted, the accused was required to go just so far and no further ;
he must raise a reasonable doubt as to who was the aggressor to en-
title him to have the evidence of threats considered.  But if he
should go so far as to solve the doubt thus raised, though favor-
ably to himself, the evidence was to be again ignored.

Evidence of previous uncommunicated threats is admissible in
cases where it is doubtful who began the difficulty, as tending to
solve the doubt in favor of the accused by showing a disposition
by the deceased to make the attack.  It is probable that the error
has arisen in this case from a misconception of the meaning of the
text-writers who announce that the evidence is only admissible in
doubtful cases.  But the question is one of competency of evidence
and not of its weight.  The doubt exists in the case as developed
before the jury, not in it as considered by the jury.  If, on a trial
for murder, A. swears that the accused, and B that the deceased
was the aggressor, the killing is of doubtful origin within the
rule, though the jury should, on final consideration, believe A and
disbelieve B.  The court, which must pronounce upon the compe-
tency of the evidence, is not permitted to pass upon the credibility
of the witnesses ; it must admit or reject the evidence without
knowing to which witnesses credence will be given by the jury.

When evidence has been offered tending to prove that the de-
ceased was the aggressor, then, though there may be a conflict of
testimony on the point, evidence of previous (though uncommuni-
cated) threats is to be admitted as supporting the other evidence.
*Johnson* v. *The State*, 54 Miss. 430 ; *Wiggins* v. *The People*, 93
Md. 465 ; *Keener's Case*, 18 Ga. 194.; *Arnold's Case*, 15 Cal. 476;
*Hawthorne* v. *The State*, 61 Miss. 749.

But it is not true that such evidence is not admissible if it be
clearly shown that the deceased and not the accused was the
aggressor.  If that fact be established, the evidence is competent
to interpret the act and motive of the deceased.  It is then valu-
able to determine the violence of the attack and the purpose with
which it was made.  An act meaningless when performed by one
having no grudge or hatred to another may be fraught with deadly

significance under other circumstances and may be the overt act indicating a purpose to kill that will warrant a resort to means of self-defense by the party threatened.

*Judgment reversed.*