MOTT *v.* State.

[86 South. 514. No. 21519.]

1. Homicide. *Previous uncommunicated threats are admissible when doubtful who began difficulty.*
   Evidence of previous uncommunciated threats is admissible in cases where it is doubtful who began the difficulty, as tending to solve the doubt.

2. Homicide. *Aggression is doubtful where evidence thereon is conflicting.*
   The question as to who is the aggressor is doubtful in the meaning of this rule.· when there is a conflict of testimony upon that point.

3. Homicide. *Uncommunicated threat held admissible where deceased first hit defendant.*
   Where the deceased, three days before the difficulty with appellant, stated that he would kill the appellant before the week

was over if he had to knock him in the head, and the testimony was conflicting as to who was the aggressor but shows uncontradictedly that deceased struck the first blow hitting appellant a very severe blow in the head with a cant hook, the testimony of this uncommunicated threat was material, and it was reversible error to exclude.

4. CRIMINAL LAW. *Only approved instructions should be requested.* In homicide cases it is better practice for the state to request instructions that have been approved by this court and for as few as will clearly present the theory of the state.

APPEAL from circuit court of Newton county.

HON. A. J. MCLAIN, Judge.

Martin Mott was convicted of murder, and he appeals. Reversed and remanded.

*Byrd & Byrd,* for appellant.

To assist in determining who was the aggressor in a difficulty this court has always held, we think, that previous threats made by either party against the other are admissible. The defendant introduced Mr. Garl Harris who testified, in the absence of the jury, as to a previous threat made by deceased against defendant. But this testimony was excluded and not allowed to go to the jury. We respectfully submit that this was error. We call the court's attention to the following authorities which, we think, are decisive of this point and which demonstrate that the court was in error in excluding the testimony: "The testimony of the witness Smith should not have been excluded. The fact that the deceased was trying to procure a pistol from him with which, as he in effect stated to another, he intended to kill deceased, was material in determining whether he or the defendant was the aggressor, in the difficulty in which he lost his life." *Lucas* v. *State,* 67 So. 851—latter part of the opinion.

"But where death ensues from a conflict, and a question is raised by the evidence who was the aggressor, and whether the accused may not have acted in self-defense, recent

threats may aid the jury in coming to a satisfactory con-
clusion. Such we understand to be the reasonable rule,
illustrated with more or less clearness, in the cases re-
ferred to." *Johnson* v. *State*, 54 Miss. 430.

". . . and Weathersby testified that Bradley told him
that the woman he was hunting for was a married woman,
and remarked that there would be trouble if her husband,
who was at Columbia, found out about their relations, and
that he would either have to kill the husband or the hus-
band would kill him. Though uncommunicated, the con-
versation related to the feeling Bradley had for Leverett,
and was threatening."

Likewise the testimony of Mrs. Leverett, with reference
to a conversation with Bradley over the telephone, which
conversation was communicated to Leverett, was admis-
sible for the same reason. *Leverett* v. *State*, 73 So. 273.
And to the same effect are the following cases: *Guice* v.
*State*, 60 Miss. 714; *Hawthorne* v. *State*, 61 Miss. 749;
*Johnson* v. *State*, 66 Miss. 189; *Wiggins Case*, 93 U. S. 465.

Wharton in his work on Criminal Law, section 1027,
last Ed., says: "Where the question is as to what was the
deceased's attitude at the time of the fatal encounter, re-
cent threats may become relevant to show that this atti-
tude was one hostile to the defendant, even though such
threats were not communicated to the defendant.

Underhill on Criminal Evidence (second Ed.), section
326.

*W. M. Hemingway,* assistant attorney-general, for the
state.

The exclusion of the threats, and the case it made out,
was proper because there is not the slightest connection
between the threats that were made and the occasion of
this fuss and killing. If the threats had had any bearing
on this case then, of course, they should have been ad-
mitted—even uncommunicated threats.

SYKES, J., delivered the opinion of the court.

Martin Mott was convicted of the murder of one Avery McCarty and sentenced to the penitentiary for life, from which judgment this appeal is prosecuted.

The testimony in the case is conflicting. Three eyewitnesses to the homicide testified for the state. According to the testimony of the two negro eyewitnesses to the killing, the appellant and the deceased began cursing each other and appellant told deceased that he was tired of playing and that—"The next son of a bitch that hits me I am going to stick my knife in him, and I don't give a damn who it is."

The appellant then opened his knife and went some distance away and got a drink of water, and was standing within about fifteen or twenty feet of the deceased when the deceased said to him: "If you make another God damn track toward me with that knife, I will bust your God damn brains out, and he stepped this way and Avery hit him with a cant hook."

The deceased then dropped the cant hook according to this witness and began backing back, and the appellant continued to advance on him with the open knife. The deceased stumbled and fell on his back, and the appellant stuck the knife in him. It is estimated that the deceased retreated backwards about fifteen feet.

The testimony of the next eyewitness is in substance like that above quoted, with the exception that he stated that the deceased after falling picked up a stick of some kind, called in the record a "slab," and struck appellant just after appellant had stuck his knife in deceased. Both of these witnesses testified that the deceased struck the appellant with the cant hook as hard as he could, and it is shown by the record that a cant hook is a dangerous weapon.

The third eyewitness, a white man, testified for the state that the appellant asked the deceased to quit goosing him and that deceased replied he would goose him all he

pleased, and that he (appellant) would have to take it, and called him a "yellow son of a bitch;" that appellant stated that he would not, and deceased then told appellant that if he made one step toward him that he would burst his brains out with the cant hook; that the appellant took a step but not toward the deceased, and that deceased then struck the appellant with the cant hook but did not knock him down; that when the fuss first started between these two negroes the appellant had a knife out whittling; at that time the appellant showed no signs of being mad; that, after the deceased struck appellant with the cant hook, appellant advanced on deceased in a bent position, and the deceased dropped the cant hook and picked up a "slab" (the record does not disclose the size of this "slab") ; that, after the deceased had stumbled and fallen, he struck the appellant over the head with this "slab" about the time appellant stuck his knife in the deceased; and that he further struck the appellant a second blow with the "slab." Only one knife wound was inflicted upon the deceased. The appellant at once got up and ran away from the scene of the difficulty.

According to the testimony of the two first eyewitnesses for the state, the jury would have been justified in believing that the appellant was the aggressor in the difficulty, while under the testimony of the third eyewitness for the state the deceased was the aggressor. And under this testimony the deceased had not abandoned the difficulty, but merely dropped the cant hook and at once procured another weapon to continue the fray.

No eyewitnesses to the difficulty testified for the appellant. A number of witnesses testified that the general reputation for peace and violence of the appellant in the community in which he lived was good, and that of the deceased was bad. A physician testified that he examined the wounds on the appellant and found two contused and cut places on his head. The appellant offered to prove by a witness that a day or two before the homicide the deceased, Avery McCarty, came to his home and tried to get

a pistol from him and told him that he wanted it to shoot the appellant. The witness declined to lend the deceased the pistol, and deceased then said:

"If I cannot get one in no way at all, I will kill him before this day week if I have to knock him in the head."

This conversation occurred on Sunday, and the killing occurred the following Tuesday. The state objected to the introduction of this testimony, and the objection was sustained.

From the testimony it will be seen that this is a very close case upon the facts. If there were no error committed in the trial, we would be inclined to let the verdict stand, though we think that, under the testimony for the state to the effect that the appellant was perhaps the aggressor in the actual fight, the evidence would better support a verdict of manslaughter than murder. The testimony, however, is in conflict as to who was the aggressor in the difficulty, and, this being true, the uncommunicated threat made by the deceased that he would kill the appellant before the week was over even if he had to knock him in the head was very important and material testimony to be considered by the jury in determining who was the aggressor.

This question is ably discussed in the case of *Johnson* v. *State,* 54 Miss. 430. On page 433, the court says:

"The testimony under consideration is relevant and pertinent where it may aid, as a circumstance, in determining, in connection with other facts, whether the homicide is excusable or not; as when the evidence fairly raises the question which was the aggressor. There the proof that the deceased had made serious threats, shortly before the rencounter, may be considered by the jury for the purpose just indicated."

The same doctrine is reaffirmed in the case of *Johnson* v. *State,* 66 Miss. 189, 5 So. 95. In this opinion it is said:

"Evidence of previous uncommunicated threats is admissible in cases where it is doubtful who began the difficulty, as tending to solve the doubt in favor of the ac-

cused by showing a disposition by the deceased to make the attack. . . . When evidence has been offered tending to prove that the deceased was the aggressor, then, though there may be a conflict of testimony on the point, evidence of previous (though uncommunicated) threats is to be admitted as supporting the other evidence"—citing numerous authorities.

For the exclusion of this testimony the case must be reversed.

Several of the instructions granted the state are also assigned as error. Some of these instructions are inartificially drawn. In homicide cases, it is always the safest course for the state to request instructions that have been approved by this court and for as few as will clearly present the theory of the state to the jury. As has several times been stated by this court, the beaten path is always the safest path for the state to pursue in requesting instructions.

*Reversed and remanded.*