[No. 10,552.—In Bank.]

# I. M. KALLOCH v. SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO ET AL.

INFORMATION—EXAMINATION FOR COMMITMENT. — Section 809, Penal Code, authorizes a proceeding by information only where a defendant has been examined and committed as provided in § 872 of the Penal Code. *Held*, therefore, where a prisoner had been committed by the magistrate upon the oral testimony of the witnesses, and without reducing them to writing (as required by the section referred to), that an information against him was rightly dismissed, and constituted no bar to another information.

ID.—ID.—WAIVER OF EXAMINATION.—The provision* of the Penal Code in cases of felony contemplate an examination of the case by the committing magistrate, and do not authorize a waiver of examination by the defendant.

ID.—PENDENCY OF FORMER ACTION.—The pendency of one indictment is no ground for plea in abatement to another indictment in the same court for the same cause, and the same rule applies to informations.

ID.—CONSTITUTIONAL LAW.—Section 1, article 8, Constitution of California, providing for proceeding in criminal cases by information, is not in conflict with § 1, article 14, Constitution of the United States.

ID.—ID.—DUE PROCESS OF LAW—LAW OF THE LAND—DEFINITION. — The words "due process of law," as used in § 1, article 14, of the Constitution of the United States, and in State Constitutions, were undoubtedly intended to convey the same meaning as the words "the law of the land" in Magna Charta; and in the most usual acceptation are to be regarded as meaning general public laws binding all the members of the community under similar circumstances, and not partial or private laws affecting the rights of individuals.

PROHIBITION to the Superior Court, of the City and County of San Francisco. FREELON, J.

*Henry E. Heighton*, and *T. B. Shapter*, for the Plaintiff.

The Court should discharge the petitioner absolutely:

(*a*) Because the second arrest, and therefore all subsequent proceedings, were and are absolutely void.

(*b*) Because, while the setting aside of an indictment is no bar to a subsequent prosecution for the same offense, nevertheless the *mode* of the statute must be followed, and the statute gives an alternative to the Court, *either* to direct a new information to be filed, *or* to discharge unconditionally and *finally;* and in this case the latter course was pursued.

The duty of the Court in granting a motion to set aside an indictment or an information is clearly expressed in the statute; the Court must order that the defendant, if in custody, be dis-

charged therefrom, *unless* it directs that the case be resubmitted. And the statute further provides, "that after such order of resubmission the defendant may be examined before a magistrate, and discharged or committed by him, as in other cases, if, before indictment or information filed, he has not been examined and committed by a magistrate." Penal Code, 997–999.

The proceeding by information is in conflict with the provisions of the Federal Constitution. (Thomas Coke 1st Ins. vol. 3, 555; 4 Wendell's Blackstone, 309; 2 Stephen's DeLolme on the British Const. 774; *Zylstra* v. *The Corporation of Charleston*, 1 Bay's Rep. (S. C.) 391; *The State* v. *Maxcy*, 1 McMullan's Rep. (S. C.) 502; *Vanzant* v. *Waddel*, 2 Yerg. (Tenn.) 270–271. See Cooley's Constitutional Limitations, 4th ed., chap. xi, p. 440–441, 355–336; Story on Constitution, §§ 1784–1786, 1945; *Bank of Columbia* v. *O'Kelly*, 4 Wheat. 235, 241; *Towle* v. *Mann*, Albany Law Journal, vol. 21, p. 430; *Wilkinson* v. *Leland et al*, 2 Peters, 655; *Taylor* v. *Porter & Ford*, 4 Hill's Rep. 144; *Westervelt* v. *Gregg*, 12 N. Y. 209, 212.) An examination before a magistrate is a statutory right, which the accused may waive if he prefers so to do. (1 Colby's Crim. Law, 188; *Champlain* v. *The People*, 2 N. Y. (2 Com.) 84, 85; *Jackson* v. *The Commonwealth*, 23 Gratt. (Va.) 926; *Phillips* v. *The Commonwealth*, 19 id. 529, 530; *Clere's Case*, 3 id. 616, 617; *Chahoon's Case*, 20 id. 749.)

*Alex. Campbell*, for the Defendant.

The former proceeding is no bar to the present one. (*Ex parte Clarke*, 54 Cal. 412; and *Ex parte Cahill*, 52 id. 463; Whart. Cr. Pl. & Pr. 8th ed. § 449; *State* v. *Garthwaite*, 2 Zab. (N. J.) 143.)

The provision of the State Constitution authorizing information does not conflict with the Fourteenth Amendment of the Constitution of the United States. (*Walker* v. *Sauvinet*, 92 U. S. Rep. 90; *Rowan* v. *State*, 30 Wis. 129; *Corfield* v. *Coryell*, 4 Wash. C. C. 371; *Paul* v. *Virginia*, 8 Wall. 180; *Slaughter House Cases*, 16 id. 36; 2 Story on the Const. 4th ed. 666.)

The proceeding by information is established in Connecticut, Michigan, Louisiana, Wisconsin, and Texas.

Morrison, C. J. :

This is an application for a writ of prohibition, under part 3, chapter 3, of the Code of Civil Procedure.

" The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, when such proceedings are without, or in excess of, the jurisdiction of such tribunal, corporation, board, or person."

To authorize the issuance of the writ in this case, the proceeding complained of must be in excess of the jurisdiction of the Court. (*The People ex rel. Brundage* v. *the Supervisors of Kern County*, 47 Cal. 81; *People ex rel. Scannell* v. *Whitney*, id. 584.)

The facts of this case are as follows: On the 29th day of April, 1880, a complaint in writing was filed in the Police Court of the City and County of San Francisco, charging the petitioner with the murder of one Charles De Young, and being brought before the Court, the petitioner waived the preliminary examination provided for by § 869 of the Penal Code. But, notwithstanding such waiver, the Police Judge proceeded with the examination of the case, and, after hearing the *oral statements* of several witnesses, committed the petitioner for trial.

On the 17th day of May, 1880, an information was filed by the District Attorney, charging the petitioner with the crime of murder.

On May 22d, the petitioner challenged the panel of the Grand Jury, and his challenge was overruled by the Court.

On the 19th day of June, the information was set aside by the Superior Court, upon petitioner's motion, on the ground that the testimony of the witnesses examined before the Police Court had not been reduced to writing, as directed by § 869 of the Penal Code. After the information was set aside, the petitioner moved for and obtained an order of the Court, directing his discharge from custody; and immediately after his discharge the petitioner was arrested on a second warrant, charging him with the same offense. This warrant was sued out before the information was set aside, and, on the 21st day of June, the petitioner was again taken before the Police Court, and he a

second time waived a preliminary examination; but, disregarding such waiver, the Police Judge proceeded with the examination, took down in writing the testimony of the witnesses, held the petitioner for trial, and returned the depositions to the Superior Court. All of this latter proceeding was in accordance with the provisions of the Code.

On July the 13th, after the petitioner had been examined and committed on the second hearing, another information was filed, charging the petitioner with the same offense.

On July the 29th, a motion was made to set aside the last-mentioned information; and on the 30th day of July, the petitioner offered to challenge the grand jurors individually, but the privilege of doing so was denied him, on the ground that he had at that time no standing in Court for that purpose. On the 19th day of August, the motion to set aside the second information was denied, and on being called on to plead thereto, the petitioner interposed the plea of " once in jeopardy."

The foregoing are the material facts in this case, upon which this Court is asked to stay all further proceedings in the Court below by its writ of prohibition.

The first point made on behalf of the petitioner is, that " he should be discharged, because the second arrest, and all proceedings subsequent thereto, were absolutely void."

The ground here taken is, that, as the petitioner had once been proceeded against by information, and as the Court had set aside that information, and had ordered that the petitioner be discharged, it was not competent for the District Attorney to proceed against him a second time by another information.

We will here refer to several provisions of the Penal Code, regulating proceedings in criminal cases.

Section 858 provides, that, " when the defendant is brought before the magistrate upon an arrest, either with or without warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel in every stage of the proceedings."

Section 860 : " If the defendant requires the aid of counsel, the magistrate must, immediately after the appearance of counsel, or if; after waiting a reasonable time therefor, none appear, proceed to examine the case."

Section 861 : " The examination must be completed at one session, unless the magistrate for good cause, shown by affidavit, postpone it. The postponement cannot be for more than two days at each time, nor more than six days in all, unless by consent or on motion of the defendant."

Section 864 : " At the examination, the magistrate must first read to the defendant the depositions of the witnesses examined in taking the information," etc.

Section 865 : " The witnesses must be examined in the presence of the defendant, and may be cross-examined in his behalf."

Section 869 : " The testimony given by each witness must be reduced to writing, as a deposition, by the magistrate or under his direction, and authenticated in the following form," etc.

Section 870 : " The magistrate or his clerk must keep the depositions taken on the information or on the examination until their return to the proper Court," etc.

Section 872 : " If, however, it appears from the examination that a public offense has been committed, and there is sufficient cause to believe the defendant guilty thereof, *the magistrate must indorse on the depositions* an order, signed by him, to the following effect : ' It appearing to me that the offense in the within deposition mentioned (or any offense, according to the fact, stating generally the nature thereof) has been committed, and that there is sufficient cause to believe the within-named A. B. guilty thereof, I order that he be held to answer to the same.' "

The foregoing are the provisions of the Penal Code, so far as they are applicable to this case, down to the time of the proceeding by information.

The proceeding by information, as a substitute for the ordinary indictment, is a creature of the new Constitution, § 8, art. i, of which provides, that " offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, or by indictment with or without such examination and commitment, as may be prescribed by law." To carry into effect the foregoing provision of the Constitution, the Legislature, by an Act approved April 9th, 1880, enacted as follows : " The following is added as a new section to the said Code (Penal Code), to be known as

§ 809: When a defendant has been examined and committed as provided in § 872 of this Code, it shall be the duty of the District Attorney, within thirty days thereafter, to file, in the Superior Court of the County in which the offense is triable, an information, charging the defendant with such offense. The information shall be in the name of the people of the State of California, shall be subscribed by the District Attorney, and shall be in form like an indictment for the same offense." It will be observed, that the above provision of the Code authorizes a proceeding by information only where a defendant has been examined and committed as provided in § 872 of the Penal Code; and it will also be remembered, that at the first hearing before the Police Court the petitioner was not examined and committed in conformity to said section.

That section requires the committing magistrate to take the evidence of witnesses examined before him in the form of depositions, but upon the first examination of petitioner's case the testimony was taken orally. This was not a compliance with the provisions of the Code, and for that reason the Superior Court set aside the information. It is unnecessary for us to decide, at this time, whether the order of the Court setting aside the information was properly made or not, as that question is not now before us. When the petitioner was taken before the Police Judge the second time, he waived a preliminary examination; but, notwithstanding such waiver, the magistrate proceeded in accordance with § 872 of the Penal Code. It is claimed, however, by the learned counsel for the petitioner, "that an examination before a magistrate is a statutory right, which the accused may waive if he prefers so to do." We find no authority for such a proposition in the provisions of the Penal Code; but, on the contrary, they all seem to contemplate an examination of the case by the committing magistrate, and if, after such an examination, he finds there is reasonable ground to believe that an offense has been committed, and that the accused is guilty thereof, he is required to so state by *indorsement upon the depositions.* This is not, however, a new question in this State, for it was directly passed upon in *Ex parte Walsh,* 39 Cal. 705. The learned Judge there says: " As under § 103, the Justice of the Peace and the District Judge are alike con-

stituted magistrates for this purpose, it might be argued that the proceedings of the one, when conducted pursuant to the statute, and resulting in holding the accused to answer, necessarily ousted the authority of the other to proceed even to investigate the same charge. But no such question properly arises here, and I express no opinion upon it, for in this case, as has been seen, no examination whatever of witnesses was in fact had before the Justice of the Peace. Walsh was dealt with simply upon his own *waiver of an examination.* The statute provides, that, after the witnesses for the people shall have been examined, the defendant may waive his right to make a statement in relation to the charge against him; but it does not provide for nor contemplate a total waiver of any examination whatever into the charge made against him in the first instance. An inquiry, to some extent at least, would seem to be required for the purposes of public justice."

In the foregoing case, it was held that a waiver of an examination by a party charged with felony before a Justice of the Peace, and the commitment and admission to bail of the accused by the Justice, without any examination of witnesses for the people, is not a bar to any other or further examination on the same charge by a District Judge or other magistrate. Speaking further upon the question of waiver, the learned Judge (then Mr. Justice Wallace) says: " Of course, no blame can be imputed to the Justice of the Peace acting in this instance, for in proceeding upon the waiver of the accused he only pursued a course of practice which has become quite general in this State; but it is a practice which, I think, is not authorized by the statute, and ought not to be encouraged, because it is liable to abuse; and when that course is adopted, it should not be held to preclude a second examination, when such examination is instituted and conducted according to the statutory requirement."

In the case now under consideration, the information was set aside by the Court, as has already been remarked, on the motion of the petitioner, and on the ground that no *legal examination* had been had of the case before the examining magistrate. The case of *Ex parte Cahill*, 52 Cal. 463, is also in point. It was there decided, " that if a defendant has been held to answer by a Justice of the Peace for a felony, and the Grand Jury recom-

mend that the case be referred to the next Grand Jury, and the County Court then order that the defendant be discharged from custody, such order is not a bar to another prosecution of the defendant for the same offense." (*Ex parte Cahill*, 52 Cal. 463.) To the same effect is the recent decision of this Court in *Ex parte Clarke*, 54 Cal. 412.

But was it a material fact in the case, that the second prosecution was commenced before the first was ended? Suppose the prosecution had been by indictment, would the pendency of the indictment affect the right of the prosecution to present another for the same offense? This question is answered in the negative by a multitude of authorities, a few of which we will notice. In the case of *Dutton* v. *The State*, 5 Ind. 534, it was held, that " another indictment pending for the same offense constitutes no ground of abatement. This, in criminal prosecutions, seems to be the settled rule." (1 Chitty's Crim. L. 447.) In the case of the *Commonwealth* v. *Murphy*, 11 Cush. 472, the Court says, that " the pendency of one indictment is no ground for plea in abatement to another indictment in the same court for the same cause." In the case of *Miazza* v. *The State*, 36 Miss. 616, the Court decided, that " the motion in arrest of judgment, on the ground that other indictments of similar import were then pending in the same court against the same defendant, was properly overruled." In *United States* v. *Herbert*, 5 Cranch C. C. Rep. 87, Chief Justice Cranch said, that " the pendency of another indictment against the defendant for the same offense is no ground for arresting the judgment." The last authority to which we will refer on this subject is Wharton's Criminal Pleading and Practice, § 452, where the author says: " It has been ruled that, though the defendant has pleaded to a former indictment for the same offense, the fact of the former indictment being still pending is no bar to a trial on the second." It is true, that all the foregoing cases refer to indictments, but the rule is equally applicable to an information, as the latter is simply designed to serve the purpose and take the place of the former. Each is but an accusation, in legal form, of the offense with which the prisoner stands charged, and for which he is to be placed upon trial. We can, therefore, see nothing in the provisions of the Penal Code, or in the general

principles of law, applicable to proceedings in criminal cases, which in any manner affect the regularity and validity of the second information, on the ground above stated.

But another objection is made to the proceeding by information, which we will now examine. It is claimed, on behalf of the petitioner, that the provision of the Constitution of this State, authorizing a prosecution by information instead of by indictment, is in conflict with § 1, art. xiv, of the Constitution of the United States, which provides, that " no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, *nor shall any State deprive any person of life, liberty, or property, without due process of law.*" The meaning of this language, found in the amendment to the Federal Constitution, has been the subject of much discussion, not only in the courts, but by law-writers and statesmen. The same provision is found in the Constitution of this State, as well as in the Constitutions of other States, and, in fact, is as old as Magna Charta. " The protection of the subject in the free enjoyment of his life, his liberty, and his property, except as they might be declared by the judgment of his peers or the law of the land to be forfeited, was guaranteed by the 29th chapter, 'which alone,' says Sir William Blackstone, ' would have merited the title that it bears of the Great Charter.' The people of the American States, holding the sovereignty in their own hands, have no occasion to exact pledges from any one for a due observance of individual rights. But the aggressive tendency of power is such, that they have deemed it of no small importance, that, in framing the instruments under which their governments are to be administered by the agents, they should repeat and re-enact this guaranty, and thereby adopt it as a principle of constitutional protection. * * *. The language employed is generally nearly identical, except that the phrase ' due process of law ' is sometimes used, sometimes ' the law of the land,' and in some cases both. But the meaning is the same in every case, and by the Fourteenth Amendment this guaranty is now incorporated in the Constitution of the United States." (Cooley's Constitutional Limitations, p. 435, *et seq.*) The definition given to this language by Mr. Webster, in the Dartmouth College case, is very often quoted. He said in that case :

"By 'the law of the land' is most clearly intended the general law—a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is, that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society." (*Dartmouth College* v. *Woodward,* 4 Wheat. 519.) Mr. Cooley says that the above definition is apt and suitable as applied to judicial proceedings, which cannot be valid unless they "proceed upon inquiry" and "render judgment after trial." In the case of *Janes et al.* v. *Reynolds, administrator* (2 Tex. 251), it was said: "The term 'law of the land' has been often construed and somewhat variously defined. When first used in the Magna Charta of the Kings of England, they probably meant the established law of the kingdom, in opposition to the civil or Roman law, which was about being introduced into the land, to the exclusion of the former laws of the country. They are now, in the most usual acceptation, regarded as general public laws, binding all the members of the community under similar circumstances, and not partial or private laws, affecting the rights of private individuals." Again, it has been said:

"The spirit of these constitutional provisions is, briefly, that no person can be made to suffer for a criminal offense, unless the penalty be inflicted by 'due process of law.' What that is has been often defined, but never better than it was, both historically and critically, by Judge Curtis of the Supreme Court of the United States, in *Den* v. *Murray et al.* 18 Howard, 272. It ordinarily implies and includes a complaint, a defendant, and a Judge, regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceeding." (*Huber* v. *Reily,* 53 Penn'a State Rep. 117.) Judge Curtis, in the case in 18 Howard, uses the following language: "The words 'due process of law' were undoubtedly intended to convey the same meaning as the words 'by the law of the land' in Magna Charta. Lord Coke, in his commentary on these words (2 Inst. 50), says they mean due process of law.    *    *    *    For though 'due process of law' generally implies and includes *actor, reus, judex,* regular allegations, opportunity to answer, and a trial according to some settled course of judicial proceed-

ing, yet this is not universally true." In the case of *People e.c rel Witherbee* v. *The Supervisors*, 70 N. Y. 234, it was held, that "the Legislature has the right to take away a particular form of remedy, and give a new one. * * * Due process of law requires that a party shall be properly brought into Court, and that he shall have an opportunity when there to prove any fact which, according to the Constitution and usages of the common law, would be a protection to him or his property. ' Due process of law' means law in its regular course of administration through courts of justice." (2 Kent's Com. 13.) In Mr. Cooley's recent work on the principles of constitutional law, page 224, we find the following language: " When life and liberty are in question, there must, in every instance, be judicial proceedings; and that requirement implies an accusation, a hearing before an impartial tribunal with proper jurisdiction, and a conviction and judgment, before the punishment can be inflicted. But the States will prescribe their own modes of proceeding and trial. *The accusation may be by Grand Jury, or without one,* the trial by jury or by Court, and whatever is established will be ' due process of law,' so that it be general and impartial in operation, and disregard no provision of Federal or State Constitution. In general, however, an accused person will be entitled to the judgment of his peers, unless that mode of trial is expressly dispensed with by law."

This brings us to several decisions rendered since the Fourteenth Amendment was adopted. The adoption of the Fourteenth Amendment was one of the results of the late civil war, and its objects and purposes were to secure to the recently enfranchised people of the Southern States equal rights and protection under the law. In the State of Wisconsin they have a prosecution by information; and in the recent case of *Rowan* v. *The State*, 30 Wis. 129, the Supreme Court of that State says: " The historical origin of the Fourteenth Amendment to the Constitution of the United States is familiar to all persons in this country. Prior to its adoption, there was a class of persons in the States which, on account of the state of public sentiment, were particularly exposed to oppressive and unfriendly local legislation. They were liable to be despoiled of their property, or to be deprived of their rights, privileges, and immunities, in an arbitrary

manner, and without 'due process of law,' and the object of the
amendment was to protect this class especially from any arbi-
trary exercise of the powers of State Governments, and to se-
cure for it equal and impartial justice in the administration of
law, civil and criminal.   But its design was not to confine the
States to a particular mode of procedure in judicial proceedings,
and prohibit them from prosecuting for felonies by information
instead of by indictment, if they chose to abolish the Grand.
Jury system.   And the words 'due process of law,' in the
amendment, do not mean, and have not the effect, to limit the
powers of State Governments to prosecutions for crime by in-
dictment; but these words do mean law in its regular course of
administration, according to prescribed forms, and in accordance
with the general rules for the protection of individual rights.
Administrative and remedial proceedings must change from
time to time with the advancement of legal science and the prog
ress of society; and if the people of the State find it wise and
expedient to abolish the Grand Jury, and prosecute all crimes
by information, there is nothing in our State Constitution, and
nothing in the Fourteenth Amendment to the Constitution of the
United States, which prevents them from doing so."   The case
of *Walker* v. *Sauvinet*, 92 U. S. Rep. 90, is very instructive
upon this subject, as it is there held, "that a trial by jury in
suits at common law, pending in the State Courts, is not a privi-
lege or immunity of National citizenship which the States are
forbidden by the Fourteenth Amendment to abridge.   A State
cannot deprive a person of his property without due process of
law, but this does not necessarily imply that all trials in the
State Courts affecting the property of persons must be by jury.
This requirement of the Constitution is met, if the trial is had
according to the settled course of judicial proceedings.   Due
process of law is process due according to the law of the land.
This process of the State is regulated by the law of the State."
And in the later case of the *United States* v. *Cruikshank et al.*
92 U. S. Rep. 554, the same Court says: "The Fourteenth
Amendment prohibits a State from depriving any person of life,
liberty, or property, without due process of law; but this adds
nothing to the rights of one citizen as against another.   It sim-
ply furnishes an additional guaranty against any encroachments

by the States upon the fundamental rights which belong to every citizen as a member of society. As was said by Mr. Justice Johnson, in *Bank of Columbia* v. *Oakley*, 4 Wheat. 244, 'It secures the individual from the arbitrary exercise of the powers of Government, unrestrained by the established principles of private rights and distributive justice.'"

We have here three decisions of the Supreme Court of the United States upon this question, two of which were made since the adoption of the Fourteenth Amendment. The right of trial by jury was as sacred under the principles of common law as was the right of a party charged with crime to have his case submitted to a grand jury for its action and determination. The above case of *Walker* v. *Sauvinet* expressly holds, that it was competent for the Legislature of Louisiana to take away that right; that there was nothing in the Fourteenth Amendment which prohibited it; and, by parity of reasoning, it would have been equally within the power and authority of the Legislature to abolish the proceeding by indictment, and to substitute therefor the proceeding by information. This proceeding, as is regulated by the Constitution and laws of this State, is not opposed to any of the definitions given of the phrases " due process of the law" and " the law of the land "; but, on the contrary, it is a proceeding strictly within such definitions, as much so in every respect as is a proceeding by indictment. It may be questionable whether the proceeding by indictment secures to the accused any superior rights and privileges; but certainly a prosecution by information takes from him no immunity or protection to which he is entitled under the law. But the Constitution of this State has made provision for this form of prosecution, and the Legislature has furnished the machinery to enforce it. In our opinion, the proceeding is a legal and constitutional one.

Writ denied.

Ross, J., McKinstry, J., Sharpstein, J., Thornton, J., Myrick, J., and McKee, J., concurred.