Hon. WILLIAM H. DE WITT, ⎫
Hon. EDGAR N. HARWOOD, ⎬ Associate Justices.
⎭

---

## STATE, APPELLANT, v. AH JIM, RESPONDENT.

CONSTITUTIONAL LAW—*Section 8, Article iii. of the Constitution interpreted—Prosecution by information.*—Section 8, article iii. of the Constitution, provides as follows: ". . . . All criminal actions in the District Court, except those on appeal, shall be prosecuted by information, after examination and commitment by a magistrate, or after leave granted by the court, or shall be prosecuted by indictment without such examination or commitment, or without such leave of the court." *Held*, that this clause of the Constitution did not execute itself, and before it could be carried into effect, the exercise, jurisdiction, and limitations of the procedure, and the rights and pleadings of the State and accused, must be defined by the legislative department.

SAME—*Grand jury.*—Section 8, article iii. of the Constitution, provides as follows: ". . . . A grand jury shall consist of seven persons, of whom five must concur to find an indictment." *Held*, that this clause of the Constitution executes itself, and in the absence of further legislation, all offenses of the grade of felonies, or having their origin in the District Court, must be inquired into under the provisions of the Criminal Practice Act relative to indictments.

SAME—*Ex post facto law.*—*Held, also.* that the substantial rights of the accused would not be prejudiced by the submission of his case to the grand jury created by the Constitution, and that the above section of the Constitution was not *ex post facto.*

*Appeal from First Judicial District, Lewis and Clarke County.*

The defendant was prosecuted by information filed by the county attorney. A motion to quash the information on the ground that the county attorney had no authority to make or file it was sustained by HUNT, J.

*Henri J. Haskell*, Attorney-General, *C. B. Nolan*, of counsel, for State, Appellant.

1. Section 1, page 118 of the Laws of the Sixteenth Session, defines the duties of county attorney, and, among other things, empowers him to prosecute all public prosecutions. Section 8, article iii. of the Constitution, provides that all criminal prosecutions shall be prosecuted by information.

2. An information is an accusation or complaint exhibited against a person for some criminal offense. (4 Blackst. Com. 408, 409.) Section 20 of the fifth division of the Compiled Laws of Montana provides that the common law of England, in so far as it is applicable, and not in conflict with statutory enactment, shall be considered as of full force and effect. A proceeding upon information, having a well-settled and established standing at common law, under this provision, could be carried into effect; as it is a well-settled principle that when a legal proceeding is adopted, it is adopted with all the incidents which appertained to it at common law, except in so far as they may be in conflict with our form of government.

3. Without statutory authority conferred upon the county attorney to file an information, under the rules of the common law he would be the officer to whom was delegated that power. (*Territory* v. *Cutinola*, New Mexico, 1887, 14 Pac. Rep. 809; *State* v. *Nulf*, 15 Kan. 404.) The next question which arises, is this proceeding in the nature of an *ex post facto* law, or, if not such, being retroactive, does it operate to divest ·vested rights? A law changing the mode of procedure is not *ex post facto*. (Cooley's Constitutional Limitations, 331; *State* v. *Manning*, 14 Tex. 402; *Calder* v. *Bull*, 3 Dall. 390; 7 Am. & Eng. Encyc. of Law, 531; *Perry* v. *Commonw.* 3 Gratt. 632; *State* v. *Ryan*, 13 Minn. 371; *Ratzky* v. *People*, 29 N. Y. 124.)

There is no such thing as a vested right to a particular

remedy. (*People* v. *Mortimer*, 46 Cal. 114; *People* v. *Campbell*, 59 Cal. 243; 43 Am. Rep. 257.)

*A. J. Craven,* and *C. C. Newman,* for Respondent.

Prosecution by information is in derogation of the common law, and a departure from the general policy of the law. (10 Am. & Eng. Encyc. of Law, p. 456; Wharton's Criminal Practice and Pleading, § 86; Blackstone [Cooley], book 4, ch. 23; *State* v. *Boswell*, 104 Ind. 546.)

The common law prescribes no form of pleading in cases of information in felony cases, nor by whom subscribed, or by whom made and presented. "The forms of pleading in criminal actions in the District Court, and the rules by which the sufficiency of pleading is to be determined, are those herein prescribed." "The only pleading on the part of the Territory is the indictment." (§§ 162, 163, Comp. Stats. div. 3.) "All criminal actions . . . . shall be prosecuted by information." (Const. art. iii. § 8.)

The county attorney then must get his authority, if any he has, from the statutes of Montana, or from the Constitution. It cannot come from the statute, for at the time these laws were passed no such thing as an information was known to our laws, and could not have been in the mind of the legislator at the time the law was enacted. Then it must come, if at all, from the Constitution, and that is silent. He cannot get his authority by implication.

Neither the common law nor the statutory law, or Constitution of Montana, prescribe the form of an information in case of felony, or by whom it is to be subscribed, or how presented.

The provision of our Constitution is inoperative, and must have the vitalizing strength of additional legislation before it can have any force or effect.

Statutes in derogation of the common law are to be strictly construed. (Bishop's Criminal Practice, §§ 119, 155; *Sibley* v. *Smith*, 2 Mich. 480; *Sugar* v. *Sackett*, 13 Ga. 462; *Rathbun* v. *Acker*, 18 Barb. 393.)

The law as to information cannot apply to crimes committed and proceeded against before the adoption of the Constitution. As to such cases it is *ex post facto*. (*People* v. *Tisdale*, 57 Cal. 104; *Kring* v. *Missouri*, 107 U. S. 221, and cases cited therein.)

Penal statutes are to reach no further than their words; no person can be subject to them by implication; and all doubts concerning their interpretation are to preponderate in favor of the accused. (Bishop on Statutory Crimes, 104.) We contend that this information must be quashed, and this case be presented, if at all, by an indictment from a grand jury. '

BLAKE, C. J.—This is an appeal from the order of the court below sustaining the motion of the respondent to quash the information which was filed December 3, 1889, by the county attorney of the county of Lewis and Clarke. The respondent is charged with the commission of the offense of murder in the first degree upon the twenty-fifth day of August, 1889. After the arraignment of the accused a motion was made by his counsel, and sustained by the court, to quash the information, "because the county attorney in and for Lewis and Clarke County, Montana, had no authority to make or file the said information in the said action."

It is admitted that the State of Montana was legally organized on the eighth day of November, 1889, and that the crime which is described in the information was committed within the Territory of Montana. The questions which have been discussed on this hearing relate to the interpretation of the following clause of the eighth section of the third article of the Constitution: "All criminal actions in the District Court, except those on appeal, shall be prosecuted by information after examination and commitment by a magistrate, or after leave granted by the court, or shall be prosecuted by indictment without such examination or commitment, or without such leave of the court. A grand jury shall consist of seven persons, of whom five must concur to find an indictment. A grand jury shall only be drawn and summoned when the district judge shall, in his discretion, consider it necessary, and shall so order."

In the States which are governed by constitutions containing similar provisions regarding the procedure by information, statutes have been enacted to enable the courts to secure their enforcement. The legislative assembly of Montana have not passed any law of this nature, although it is contended that the same result has been attained by the adoption of the common

làw of England, when the same "is applicable and of a general nature, and not in conflict with special enactments." (Comp. Stats. div. 5, § 201.) This position is unsound, for two reasons. The Criminal Practice Act provides ample remedies for the execution of criminal laws, and necessarily conflicts with the proceedings by information at common law. In the next place, the use of this remedy has been limited to certain cases, and has not embraced felonies. Blackstone treats of this subject, and says: "There can be no doubt but that this mode of prosecution by information or suggestion, filed on record by the king's attorney-general, or by his coroner or master of the crown office in the court of king's bench, is as ancient as the common law itself. . . . . But these informations, of every kind, are confined by the constitutional law to mere misdemeanors only; for, wherever any capital offense is charged, the same law requires that the accusation be warranted by the oath of twelve men before the party shall be put to answer it." (4 Blackst. Com. 309, 310.) In *Ex parte Wilson*, 114 U. S. 423, Mr. Justice Gray delivers the opinion, and says: "By the law of England, informations by the attorney-general, without the intervention of a grand jury, were not allowed for capital crimes, nor for any felony, by which was understood any offense which at common law occasioned a total forfeiture of the offender's lands or goods, or both."

There are some provisions of the Constitution which have a direct bearing upon the case at bar, and should be considered. " No person shall be deprived of life, liberty, or property without due process of law." (Art. iii. § 27.) "All laws enacted by the legislative assembly of the Territory of Montana, and in force at the time the State shall be admitted into the Union, and not inconsistent with this Constitution, or the Constitution or laws of the United States of America, shall be and remain in full force as the laws of the State until altered or repealed, or until they expire by their own limitation." (Section xx. Schedule, § 1.) " No crime or criminal offense committed against the laws of the Territory of Montana shall abate, or in any wise be affected, by reason of the change from a territorial to a State form of government; but the same shall be deemed and taken to be an offense against the laws of the State, and the appropriate

courts of the State shall have jurisdiction over, and to hear and determine, the same." (Section xx. Schedule, § 1.) "Prosecutions for criminal offenses against the laws of the Territory of Montana, pending at the time the State shall be admitted into the Union, shall not abate; but the same shall continue and be prosecuted in the name of the State of Montana, and the title of every such action shall be changed to conform to this provision." (Section xx. Schedule, § 7.) "Parties who at the time of the admission of the State into the Union may be confined under lawful commitments, or otherwise lawfully held to answer for alleged violations of any of the criminal laws of the Territory of Montana, shall continue to be so confined or held until discharged therefrom by the proper courts of the State." (Section xx. Schedule, § 8.) The Constitution prescribes the following rule for its construction: "The provisions of this Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." (Art. iii. § 29.) We are aided in giving effect to the foregoing sections of the Schedule by the introductory clause: "That no inconvenience may arise by reason of changing from a territorial to a State form of government, it is declared as follows."

It is evident that the clause of the Constitution respecting the information does not execute itself. All the details affecting the exercise, jurisdiction, and limitations of the procedure, and the rights and pleadings of the State and accused, must be defined by the legislative department. It has been observed that the States which have abolished the grand-jury system have enacted laws to carry into effect this provision of the Constitution, and the following authorities will show their importance: *Rowan* v. *State*, 30 Wis. 129; 11 Am. Rep. 559; *State* v. *Sloan*, 65 Wis. 647; *Kalloch* v. *Superior Court*, 56 Cal. 229; *Hurtado* v. *California*, 110 U. S. 516; *State* v. *Boswell*, 104 Ind. 541. In *Kalloch* v. *Superior Court*, *supra*, the court says: "But the Constitution of this State has made provision for this form of prosecution, and the legislature has furnished the machinery to enforce it. In our opinion the proceeding is a legal and constitutional one." In *State* v. *Boswell*, *supra*, the court says: "It seems clear to us that one who is tried and convicted upon an information provided for by a constitutional

State statute is not deprived of his liberty without due process of law; for we perceive no reason for doubting the soundness of the proposition that proceedings founded upon an information provided for by a legally enacted statute do constitute due process of law."

The solution of the legal problem relating to the information in this case includes also the question as to the mode of prosecuting or investigating the charge against the respondent under the State government. The court below did not discharge the defendant, but ordered him to be remanded to the custody of the sheriff to await its further action. When all the provisions of the Constitution which have been cited are construed together, it will be apparent that the Criminal Practice Act relative to indictments remains in full force, with two exceptions. The number of the grand jury has been reduced from sixteen to seven, and the concurrence of five members is required to find an indictment. In these incidents the Constitution executes itself; and, in the absence of further legislation, all offenses of the grade of felonies, or having their origin in the District Court, must be inquired into in this manner.

It has been maintained that the substantial rights of the respondent will be thereby impaired, and that this ruling, in its consequences, is *ex post facto*. The leading authority upon this matter is the case of *Kring* v. *Missouri*, 107 U. S. 221. Mr. Justice Miller, in delivering the opinion of the court, declares in the following sentence the law upon the decisive point: "Tested by these *criteria*, the provision of the Constitution of Missouri which denies to plaintiff in error the benefit which the previous law gave him, of acquittal of the charge of murder in the first degree on conviction of murder in the second degree, is, as to his case, an *ex post facto* law, within the meaning of the Constitution of the United States." The same principle is recognized in *Hopt* v. *Utah*, 110 U. S. 574, and it is also held that statutes which "remove existing restrictions upon the competency of certain classes of persons as witnesses relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure. Such regulations of the mode in which the facts constituting guilt may be placed

before the jury can be made applicable to prosecutions, or trials thereafter had, without reference to the date of the commission of the offense charged." In *People* v. *Campbell*, 59 Cal. 243; 43 Am. Rep. 257, the court says: "It is not an uncommon practice to change the number of grand jurors required to investigate criminal charges, but we have never heard of the right of the legislature to make such changes questioned; neither has it ever been claimed that the charge must be investigated by the precise number of grand jurors of which that body was composed at the time the act was committed." (See, also, Cooley's Constitutional Limitations, 272, 331, 332; *People* v. *Mortimer*, 46 Cal. 114; Bishop on Statutory Crimes, §§ 178, 180.) Those authorities support the proposition that the substantial rights of the respondent will not be prejudiced by the submission of his case to the grand jury which has been created by the Constitution.

It is therefore adjudged that the order appealed from be affirmed, with costs.

HARWOOD, J., and DE WITT, J., concur.