[No. 10,039.]

## THE PEOPLE *v.* MORTIMER.

Ex Post Facto Law. — A law changing the forms of procedure by which persons accused of crime are to be tried for offenses committed before the law was passed, is not an *ex post facto* law.

Forms of Procedure in Criminal Cases. — Persons accused of crimes alleged to have been committed before the Penal Code took effect, are to be tried in accordance with the forms of procedure provided in the Code.

Argument of Counsel in Criminal Cases. — In criminal cases tried since the Penal Code took effect, the District Attorney must open and may conclude the argument, even if the offence was committed before the Code took effect.

Continuance in Criminal Case. — If the facts shown on an application for a continuance in a criminal case cast suspicion on the good faith of the application, and induce the belief that it was intended only for delay, the Court will not abuse its discretion in refusing it.

New Trial on Ground of Bias of Juror. — The fact that, after a verdict of guilty has been rendered, the accused ascertains for the first time that before the jury was empaneled a juror had formed and expressed an opinion as to his guilt, is not a ground for a new trial.

APPEAL from the District Court of the Sixth Judicial District, County of Sacramento.

The defendant was indicted for the crime of murder in killing Mary Shaw alias Mary Gibson, and was convicted of murder in the first degree. The offense was committed on the 19th day of September, 1872; the indictment was found on the 27th day of November, 1872, and the trial took place in March, 1873. The Penal Code went into effect at twelve o'clock M. on the first day of January, 1873.

The defendant appealed.

The other facts are stated in the opinion.

*S. C. Denson* and *Cameron H. King*, for Appellant, on the question of a continuance, cited *People* v. *Dias*, 6 Cal. 249; *People* v. *Dodge*, 28 id. 445, and *People* v. *Francis*, 38 id. 183. On the question of the bias of the juror, they argued that a party could not be deprived of a trial by an impartial jury, by the Legislature, because it was a right guaranteed by the Constitution of the United States, in Article VI of Amendments, which declares that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury, etc.; and that in the *People* v. *Fair*, the constitutional question was not raised or passed on. They cited Sedgwick on S. and C. Law, 534; 2 Graham & W., New Trials, 382; *State* v. *Hopkins*, 1 Bray, 372; *Busick* v. *The State*, 19 Ohio, 198; *Cody* v. *The State*, 3 How. Miss. 27; *Sellers* v. *The People*, 8 Scam. 412; *Monroe* v. *The State*, 5 Georgia, 85; and *Childers* v. *Ford*, 10 Smedes & Marshall, 25.

They also argued that each Code, except the Penal Code, contained a provision to the effect that, as to cases pending when the Codes took effect, proceedings therein must conform to those Codes, citing Code or Civil Procedure, section eight; Political Code, section eight; Civil Code, section eight; and that the Penal Code, *ex industria,* omitted this provision, and declared (Sec. 6) that any "act or omission," etc., "may be prosecuted and punished as though the Code had not been passed;" and that this clearly indicated a distinction between civil and criminal cases, and that criminal cases, when the act was committed before the Code took effect, must be prosecuted under the old law; and cited Blackstone's Com., Book 4, pp. 320, 321, and Penal Code, Secs. 175, 684, 685, and 687.

*G. A. Blanchard,* for the People, argued that a defendant in a criminal case had not a right to be tried in a particular manner, and that the Legislature might change the mode of

procedure, and cited *Calder* v. *Bull*, 3 Dallas, 386 ; Penal Code, Sec. 4. He argued that the language of section six had reference to the punishment, and not mode of procedure.

By the COURT :

The questions to be determined on this appeal are: First— Did the Court below err in directing that the counsel for the prosecution open and conclude the argument to the jury, there being two counsel on each side? Second—Did the Court err in refusing to continue the cause on the application of the defendant? Third—Ought a new trial to have been granted, on the ground that after the verdict was rendered the defendant ascertained for the first time that the juror McLaughlin, before the jury was impaneled, had formed and expressed an unqualified opinion as to the guilt of the accused, and had actual bias against him ?

The decision of the first question must turn upon the proper construction of section six of the Penal Code, which is in these words :

" SEC. 6. No act or omission, commenced after twelve o'clock, noon, of the day on which this Code takes effect as a law, is criminal or punishable, except as prescribed or authorized by this Code, or by some of the statutes which it specifies as continuing in force and as not affected by its provisions, or by some ordinance, municipal, county, or township regulation, passed or adopted under such statutes and in force when this Code takes effect. Any act or omission commenced prior to that time may be inquired of, prosecuted, and punished in the same manner as if this Code had not been passed."

Under the Criminal Practice Act, as it stood prior to the adoption of the Penal Code, we held in the case of the *People* v. *Fair*, 43 Cal. 137, that in a capital case, where

there are two counsel on each side, they must alternate in their argument to the jury. But the rule is changed by section one thousand and ninety-three of the Penal Code, which provides that "the District Attorney or other counsel for the people must open and the District Attorney may conclude the argument." The defendant in this case was indicted for murder, alleged to have been committed before the Penal Code took effect; and at the trial the people and the defendant were each represented by two counsel, and the counsel for the defendant claimed the right to alternate with the counsel for the prosecution in the argument to the jury. But the Court decided that the counsel for the prosecution must open the argument, and that the District Attorney might conclude it, which ruling is assigned as error. It is contended for the defense that under section six of the Penal Code, above quoted, it was the duty of the Court to conduct the trial in all particulars as though the Code had not been adopted. It is claimed, in other words, that the forms of procedure provided in the Code have no application in any particular to trials for offenses alleged to have been committed before the Code took effect, and the argument is based upon that portion of section six which provides that any act or omission commenced prior to the taking effect of the Code "may be inquired of, prosecuted, and punished in the same manner as if this Code had not been passed." It is said the word "may" in this sentence will be construed as "must," and that the terms "inquired of" and "prosecuted * * * in the same manner as if this Code had not been passed," necessarily imply that the forms of procedure provided in the Code were not intended to apply in any particular to that class of cases. But we will be aided somewhat in interpreting this clause, by section four of the Penal Code, which is in these words :

" The rule of the common law that penal statutes are to

be strictly construed, has no application to this Code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

The particular purpose intended to be accomplished by section six was to steer clear of any difficulty arising from the enactment of *ex post facto* laws, which are prohibited by the Constitution of the United States. But laws changing the mere forms of procedure in a criminal action are not within this category.

In his work upon Constitutional Limitations ' (p. 272) Judge COOLEY states the rule to be, that "so far as mere modes of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place. Remedies must always be under the control of the Legislature; and it would create endless confusion in legal proceedings if every case was to be conducted only in accordance with the rules of practice, and heard only by the Courts in existence when its facts arose."

It is clear, therefore, that no constitutional difficulty would be encountered in requiring past offenses to be tried under new forms of procedure, and it is equally clear that, if such offenses are to tried only under the old forms, and later offenses under the new, it would or might "create endless confusion in legal proceedings." We have had no opportunity to compare in detail the forms of procedure provided in the Code with those which before existed; but if they are now substantially the same, they are liable to be varied by future legislation—in which event, if the construction now contended for is to prevail, offenses committed before the Code took effect would be tried under one form of pro-

cedure, and later offenses under, it may be, a wholly differ-
ent form of procedure.

The next or some subsequent Legislature may direct the
grand or trial jury to be summoned or impaneled in a
manner wholly different from that which formerly pre-
vailed—in which event, on the theory of the defense, it
would be incumbent on the Court to provide two sets of
grand and trial jurors—one to inquire into and try offenses
committed before the Code took effect, and the other to
investigate and try offenses of a later date. Nothing short
of the most imperative necessity would justify us in so con-
struing section six of the Penal Code as to bring about this
result. Nor do we think that either its purpose or language
demands that we should so construe it. Its purpose clearly
was to provide that offenses committed before the Code
took effect should be *punished* under the prior laws, and
that those committed afterwards should be *punished* in pur-
suance of the Code, thereby rendering it clear that the Code
was not amenable to the charge of being an *ex post facto*
law. This being manifestly the end intended to be accom-
plished by section six, the phraseology employed to express
that intent must be construed, as required by section four,
according to the fair import of its terms, "*with a view to
effect its objects, and promote justice.*" In order to effect the
objects of that provision, and to promote justice, it is not
necessary that we should adopt the construction now con-
tended for; nor does the language of the section demand
that we should so construe it. The phrase, "may be in-
quired of, prosecuted, and punished in the same manner as if
this Code had not been passed," is and was intended to be
equivalent to the phrase, "may be investigated, prosecuted,
and punished with like effect as if this Code had not been
passed," and has no reference to the mere from of procedure
at the trial.

The next point is that the Court erred in denying the

defendant's motion for a continuance. It appears the case was first set down for trial on the 10th day of February; but on the application of the defendant, and with the consent of the District Attorney, the trial was postponed, and the case was again set for trial on the twelfth day of March, on which day the defendant moved for a continuance, to enable him to procure the testimony of Bryant and Sears, then supposed to be in the State of Nevada. The fact proposed to be established by these witnesses was that, on the night of the homicide the defendant was at the circus, in company with a woman, about the time the homicide was committed. If this fact was material, it is somewhat improbable that out of the large number of persons at the circus, none could be found to prove the presence of the defendant on that occasion, except the two witnesses now absent in another State. Moreover, the fact that Bryant was at San Francisco on the eighth of March, four days before the cause was set for trial; that he wrote to the defendant on that day, expressing his friendly feeling towards him; that on or about the very day of the trial he passed through Sacramento, on his way to Virginia City, without calling at the jail to see the defendant, are all circumstances tending strongly to cast suspicion on the good faith of the application for a continuance, and to induce the belief that it was intended only for delay. We see no just reason to infer that the Court below abused its discretion in denying the application.

On the remaining point, relating to the juror McLaughlin, it is sufficient to say that it was expressly decided in *People* v. *Fair*, 43 Cal. 137, that this is no ground for a new trial under our statute; and we still adhere to that opinion.

Judgment affirmed. Remittitur to issue forthwith.