[Crim. No. 740. First Appellate District, Division One.—December 18, 1918.]

THE PEOPLE, Respondent, v. CHARLES E. GIBSON, Appellant.

CRIMINAL LAW—FLIGHT OF DEFENDANT—INSTRUCTION.—An instruction that the flight of a person immediately after the commission of a crime of which he knows he is accused is a circumstance to be weighed by the jury as tending in some degree to prove a conscious-

ness of guilt, and is entitled to more or less weight according to the circumstances of the particular case, is not to be taken as an instruction upon the evidence.

ID.—GUILT OF DEFENDANT—ARGUMENTATIVE INSTRUCTION.—An instruction that before the jury could convict the defendant they must be satisfied not by the mere preponderance of the evidence but by evidence entirely convincing to themselves that the defendant was guilty, is argumentative, since it is only required that the jury be convinced of guilt beyond a reasonable doubt.

ID.—JURY—CHANGE IN QUALIFICATIONS—PRIOR CRIME.—The question of who among the citizens of the state shall comprise a jury is one of procedure, and a statutory change in the qualifications of jurors after a crime has been committed, is not obnoxious to the constitutional provision against *ex post facto* laws.

APPEAL from a judgment of the Superior Court of Alameda County. William M. Conley, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

John W. Stetson for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

BEASLY, J., *pro tem.*—This is an appeal from a judgment of the superior court of Alameda County, by which the defendant was convicted of a felony. The chief point made in the appeal is that the court erred in instructing the jury upon the subject of flight.

The appellant contends that the sole direct testimony upon which the conviction is based is that of the prosecuting witness, Thelma Lee, who is alleged to have been his victim. This testimony is sufficient to sustain the verdict, if believed by the jury to be true. It is admitted to be a fact that the defendant left the town in which the crime is alleged to have been committed on the evening of the day on which it was alleged to have been committed, and remained away for some months. His flight was explained by himself and his mother as not being prompted by consciousness of guilt, but rather because of an unfortunate previous experience when he was falsely accused of grand larceny and, notwithstanding his

innocence, he was compelled to "lay in jail" for several weeks before being finally discharged.

Upon this record, and other facts not necessary to recite, the trial court gave certain instructions to the jury upon the subject of appellant's flight, and it is now contended that these instructions were erroneously given. In support of this contention, the appellant invokes the authority of the case of *People* v. *Matthai*, 135 Cal. 442, [67 Pac. 694], claiming that it was decided in that case that where a defendant, having fled after the commission of the crime, offers evidence explaining his flight, no instruction whatever upon the question of flight should be given to the jury. The language quoted by counsel in his brief simply characterized an instruction there given on this subject as an instruction upon the facts, and was intended to caution the court as to the necessity of being careful in stating evidence not to give an instruction upon the facts. The explanation of his flight, given by and on behalf of appellant at his trial, might have been true or false, and the question whether it was true or false was a question for the jury, and therefore the instruction upon the subject of flight was quite proper. Counsel also attacks this instruction as erroneous, upon the ground that it was an instruction upon the evidence. The instruction was abstract in form. "You are instructed," said the court, "that the flight of a person immediately after the commission of a crime of which he knows he is accused, is a circumstance to be weighed by the jury as tending in some degree to prove a consciousness of guilt, and is entitled to more or less weight according to the circumstances of the particular case." There was more in the instruction to the same effect, and some of the language was put in concrete form and referred to the immediate case before the court. But it seems to us that, taken as a whole, the instruction could not have been misunderstood by the jury as intimating any view that the trial judge may have had of the case.

It is also contended that the court erred in refusing to give a certain cautionary instruction, the substance of which was to impress upon the minds of the jurors that a charge of the nature of that upon which the defendant was being tried, was particularly hard for him to defend against. The instruction is argumentative in certain particulars, namely, where the jury were instructed that before they could convict the de-

fendant they must be satisfied not by the mere preponderance of the evidence but by evidence entirely convincing to themselves that the defendant was guilty, because it was beyond the law, which only requires that the jury be convinced of the defendant's guilt beyond a reasonable doubt.

Defendant committed this crime—if he committed it at all—four days before the law qualifying women to serve upon juries went into effect. He contends now that this law, as to him, was *ex post facto,* and that his trial by a jury partly of women was therefore an invasion of his constitutional rights, it being contended that women, under the circumstances, were more willing to convict than men. This contention seems to us to be a false quantity in this case. The question of whom among the citizens of the state should comprise a jury, is a question of procedure, and a statutory change in the qualifications of jurors after a crime has been committed is not obnoxious to the constitutional provision against *ex post facto* laws.

The judgment is affirmed.

Lennon, P. J., and Sturtevant, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 16, 1919, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1919.

All the Justices concurred.