[Crim. No. 1557.   Second Appellate District, Division Two.—January 24, 1928.]

THE PEOPLE, Respondent, v. OSCAR EDENBURG, Appellant.

John G. Covert for Appellant.

U. S. Webb, Attorney-General, and James S. Howie and Warner I. Praul, Deputies Attorney-General, for Respondent.

THOMPSON, J..—The defendants Oscar Edenburg and Guy Watley were jointly charged and convicted of the offense of child stealing, a crime denounced by section 278 of the Penal Code. The appellant Oscar Edenburg prosecutes this appeal from the judgment of conviction.

It appears from the testimony that Mr. and Mrs. Lockhard, the parents of Ruby and Leona, fourteen and fifteen years of age, respectively, were operating a restaurant at Corcoran, California, and required the help of their daughters in its operation very early in the morning and late into the evening. For some little time prior to June 28, 1927, the daughter of Mr. Lockhard's first cousin, by name Ida May Wilson, apparently in years of about the same age as Ruby and Leona, had been visiting at Corcoran, and was anxious that the two girls should return with her to Los Angeles. A few days prior to June 28th the appellant suggested to the girls that he was going to Los Angeles and that they should come with him and the defendant Guy Watley. He promised them a good time, no work, and the privilege of going to dances and other places of amusement. He promised Ruby that they would get married, go to Phoenix, Arizona, then to some little town where they could stay until everything was over with, when they could return to Los Angeles and make their home. He arranged to get the girls after everybody was asleep and accordingly at about 3 o'clock in the morning he helped them to escape out of the window of their room, from which the screen had been cut for the purpose, and the four of them started. On arriving

in Los Angeles Wednesday afternoon Ruby was sent to the door of the home of Ida May Wilson, with oral instructions from the appellant not to let them know who she was. Ida May was not at home and the girls were taken to a place designated as "Mother Houston's" on 47th Street. Later in the day they succeeded in getting into communication with Ida May and the two defendants and the three girls attended a dance that evening. The four of them stayed at "Mother Houston's" that night. On the following day the two men and the girls went to Watts for the purpose of enabling the appellant to borrow money to continue their trip to Phoenix. On the way they stopped some distance from the home of Ida May while the defendant Guy Watley went to the house and got Ida May to accompany them to Watts. The girls were told by the appellant not to go to the house with Watley. They did not secure the needed funds at Watts and on the return to Los Angeles appellant, according to the testimony of the Lockhard girls, threatened "to beat hell out of" them if they went to the home of Ida May Wilson. However, Leona did go and stayed there that night while the appellant and Guy Watley, together with Ruby, stopped overnight at a place designated as "Bessie's," where the three of them slept in the same bed and where the appellant had sexual intercourse with Ruby. The next day the appellant was arrested in the back yard of this same house behind a chicken-coop, he and Ruby having gone out the back door when the father and officers approached the front door. There was also testimony tending to show that the two places mentioned where the appellant and defendant stopped in Los Angeles did not bear good reputations.

In the selection of the jury to try the cause the prospective jurors were examined by the trial judge and he refused to permit counsel to ask any questions which had been covered by him in his examination. The trial judge, after cautioning each of them to answer candidly asked the prospective jurors collectively concerning whether they had any prejudice against the defendants because of the nature of the charge, or of their arrest, also concerning their relationship with the attorneys, and acquaintance with either of the defendants, whether they had heard anything con-

cerning the case, whether they were biased or prejudiced by any fact, if there was any reason they could not give the defendants a fair trial, concerning their sympathy, with the usual instruction that the jurors are the sole judges of the facts, and the one concerning the presumption of innocence and the requirement that the state must prove its case beyond a reasonable doubt, and whether they would follow all of the instructions of the court. In each instance the question was so worded that it might be answered by raising or failing to raise the hand, and if no hand were raised, the judge announced "no hand is raised" or some equivalent statement. After this examination the judge remarked to counsel, "The attorneys for the defendant may ask the jurors or any one of them, any questions that are not covered by the court," which ruling was consistently followed to the extent that the trial judge sustained an objection to a question propounded by counsel for the defense asking the prospective jurors if they understood that "it requires the joint operation" of "the intent and the act" to constitute a crime on the theory that this question was covered by the question concerning whether they would abide by all of the instructions of the court. This sufficiently states the manner of selecting the jurors to understand the objections of appellant thereto, which are that "he was deprived of the right to question the prospective jurors for the purpose of determining whether or not they were unbiased and properly qualified to give him a fair and impartial trial" and that the amendment of section 1078 of the Penal Code, providing for the examination of prospective jurors by the judge, violates the constitutional inhibition against *ex post facto* laws in its application to trials for offenses committed prior to the time it took effect.

Undoubtedly appellant was entitled, as he avers, to a fair and impartial trial by jury, and if this was denied him it would constitute reversible error. It does not appear from the record, however, that he was deprived of this right. We said recently in the case of *People* v. *Riordan,* 79 Cal. App. 488 [250 Pac. 190]: "It has repeatedly been decided that in jurisdictions where no statutory limitation or restriction of such examination to individual jurors exists, a judgment will not be reversed unless it shall affirmatively appear

that the defendant was precluded from interrogating the jurors upon matters not theretofore covered, or that any juror who served was prejudiced or not qualified. (*Nichols* v. *State*, 97 Tex. Crim. 174 [260 S. W. 1050]; *Murphy* v. *United States*, 7 Fed. (2d) 85; *State* v. *Munch*, 57 Mo. App. 207; *Johnson* v. *State*, 29 Wyo. 181 [211 Pac. 484].)'' In addition to the fact that it does not appear that counsel was precluded from asking questions ''not theretofore covered'' or that ''any juror who served was prejudiced'' we are confronted by the situation that the defense did not exhaust its peremptory challenges and therefore it rather appears from the record that those who did serve were neither prejudiced nor lacked the necessary qualifications. Somewhat pertinent to the instant case is the statement in *People* v. *Craig*, 196 Cal. 19–26 [235 Pac. 721] : ''By all of the authorities of this state touching like situations the rule is that an erroneous disallowance of a challenge for cause is not prejudicial even though the defendant finally exhaust his peremptory challenges if it does not appear that he had occasion to or desired to use an additional peremptory challenge or that the jurors finally accepted were not entirely satisfactory to him.'' While we do not care to affix the stamp of approval to the method of collectively examining prospective jurors, on account of the dangers which beset its course, nevertheless the examination in this instance seems to have been quite comprehensive, and we are satisfied no prejudicial error is made to appear, and that defendant was not deprived of a fair and impartial trial by jury.

We now turn to the claim of appellant that the amendment of section 1078 of the Penal Code violates the constitutional inhibition against *ex post facto* laws in its application to trials for offenses committed prior to the time it took effect. As amended (Stats. 1927, p. 1039), it reads as follows: ''It shall be the duty of the trial court to examine the prospective jurors to select a fair and impartial jury. He shall permit reasonable examination of prospective jurors by counsel for the people and for the defendant.'' Prior to the amendment the section read: ''Trial of challenge. If the facts are denied, the challenge must be tried by the court.'' By this section and sections 1081 and 1082

of the Penal Code it would seem that the legislature assumed that the challenge for cause and the denial of the fact asserted as the foundation thereof should precede the examination of a juror. It is stated in *People* v. *Edwards,* 163 Cal. 754 [127 Pac. 58], that "In practice, however, it usually saves time and promotes justice to allow the party to first elicit the facts by questioning the juror, and this course is generally followed. (*People* v. *Reynolds,* 16 Cal. 131.) There is no other provision for the examination of jurors either to prepare for or to prove the basis for a challenge to a juror." It will be seen, therefore, that the change consists in casting the duty upon the court of examining the jurors in the first instance to determine whether or not there exists a reason for a challenge for cause. The respondent asserts that the change relates to a procedural change and therefore is not *ex post facto* in an objectionable sense. It is an insufficient answer to appellant's contention to say that the amendment involves a procedural change. Not all procedural changes are outside the inhibition. The real question to be framed is whether the person accused has been deprived of a substantial right by reason of the change. Illustrative of this we quote from the case of *Kring* v. *Missouri,* 107 U. S. 221 [27 L. Ed. 506, 2 Sup. Ct. Rep. 443, see, also, Rose's U. S. Notes] : "Can the law with regard to bail, to indictments, to grand juries, to the trial jury, all be changed by state legislation after the offense committed to the *disadvantage* of the prisoner, and not held to be *ex post facto* because it relates to procedure, as it does according to Mr. Bishop?

"And can any *substantial right* which the law gave the defendant at the time to which his guilt relates, be taken away from him by *ex post facto* legislation, because in the use of a modern phrase, it is called a law of procedure? We thing it cannot." (Italics ours.)

And from the same case, quoting from *Calder* v. *Bull,* 3 Dall. (U. S.) 386 [1 L. Ed. 648], we find a statement of four distinct classes of laws which violate the constitutional guaranty, two of which may involve changes in procedure. They are as follows: " '1. Every law that makes an action, done before the passing of the law and which was innocent when done, criminal, and punishes such action. 2. Every

law that aggravates the crime or makes it greater than it was when committed. 3. Every law that changes the punishment and inflicts a greater punishment than was annexed to the crime when committed. 4. Every law that alters the legal rules of evidence and receives less or different testimony than the law required at the time of the commission of the offense to convict the offender.' '' Viewing the complaint of appellant in the light of these enunciations from the United States supreme court we conclude that the amendment relates to a procedural change of such a character as not to deprive him of any substantial right and does not fall within any of the four classes enumerated. Nor was he deprived of a fair and impartial trial by a jury of twelve men, nor was less or different testimony sufficient to convict. The change falls within the same bounds as those found not to violate the constitutional provision in *People* v. *Mortimer,* 46 Cal. 114, *People* v. *Campbell,* 59 Cal. 243, *People* v. *Schmidt,* 33 Cal. App. 426 [165 Pac. 555]; *People* v. *Gibson,* 39 Cal. App. 202 [178 Pac. 338], and *People* v. *O'Bryan,* 165 Cal. 55 [130 Pac. 1042].

The appellant next assails the judgment for errors which he claims the trial judge committed in refusing and giving instructions. First he asserts that the court erred in refusing to give a requested instruction as follows: ''You are instructed that the offense charged in the information pertains to and is restricted to children under the age of twelve years; and if you find that the children, alleged to have been taken or enticed away from their parents, were over the age of twelve years, then you are instructed to acquit the defendants.''

Section 278 of the Penal Code reads as follows: ''Every person who maliciously, forcibly, or fraudulently takes or entices away any minor child with intent to detain and conceal such child from its parent, guardian, or other person having the lawful charge of such child, is punishable by imprisonment in the state prison not exceeding twenty years.''

Counsel bases his argument upon the fact that section 784 of the Penal Code, which states that the jurisdiction of certain criminal actions shall be in the county in which the offense is committed, etc., provides in subdivision 2 thereof as follows: ''2. For decoying, taking, or enticing away a child

under the age of twelve years, with intent to detain and conceal it from its parent, guardian, or other person having the lawful charge of the child.'' He argues that the offense mentioned in this section is the same as that denounced by section 278 and hence must be construed as a limitation upon it. It will be noted that section 784 merely fixes the jurisdiction for certain offenses and that by section 777 of the Penal Code, where the jurisdiction is not otherwise provided, ''the jurisdiction is in the county wherein it is committed.'' We see nothing necessarily inconsistent in sections 278 and 784 and in accordance with the well-recognized rule of statutory construction that all parts and phrases shall be construed so as to give each and every part thereof a meaning we can arrive at no conclusion other than that section 278 was intended to guard all minor children against those who would entice them away from their natural guardians, their parents, or from their legal guardians. As a possible aid to this construction it should be noted that in the next case to which reference is made, *People* v. *Black, infra,* the child there was of the age of sixteen years.

The next instruction complained of was one given by the court as follows: ''You are instructed that in order to convict the defendants it is not required that the prosecution prove that the defendants actually concealed or detained Ruby Lockhard or Leona Lockhard from their parents.'' Appellant relies upon the authority of *People* v. *Black,* 147 Cal. 426 [81 Pac. 1099], which holds ''that the gist of the offense consists of the taking and enticing away of a minor child 'with intent to detain and conceal such child' from its parent, guardian, or other person having lawful charge of it. In a prosecution under this section it is not enough to show that there was an intent to conceal the minor, but the intent must be accompanied with an intent to detain, and both must exist and be found by the jury in order to constitute an offense under the statute.'' We garner from counsel's argument and his objection to the instruction that his construction upon the language just quoted is that there must be an actual concealment and detention, but we do not so understand that case. It simply means, and the instructions are in accord, that the intent to conceal and the intent to detain must be proven as a fact in the case. It does not

say that the intent needs necessarily to be accompanied by an actual concealment and actual detention.

We do not repeat the instructions of the court upon the subject of intent for the reason that the next objection of counsel is to the refusal of the court to give the following instruction: "When specific intent is (an) element of offense no presumption of law can arise that will decide this question of intent." The jury were very fully instructed upon this phase of the trial in not less than five instructions and it will be sufficient for the purposes of this opinion if we point out that the court elaborately conveyed to them the substance of the law announced in *People* v. *Black, supra,* and in addition stated that " . . . when a specific intent is an element of the offense it presents a question of fact which must be proved like any other fact in the case. All the circumstances surrounding the act furnish the evidence from which the presence or absence of the specific intent may be inferred by the jury; and no presumption of law can ever arise that will decide it." It will therefore be apparent that the subject of the requested instruction was amply covered.

Appellant also complains because the trial court refused to give an instruction requested by him to the effect that the presumption of innocence is not only sufficient upon which to base an acquittal but is of such importance that the jury must acquit unless after hearing the evidence the jury is convinced beyond a reasonable doubt of defendant's guilt. In other instructions the court fully covered the law on the subject of presumption of innocence and reasonable doubt and the jury as reasonable men could not have failed to understand the law upon this phase of the case.

The last assignment of error asserts that the court improperly received evidence showing that appellant had sexual intercourse with Ruby Lockhard during the night that she remained with him and the other defendant at the place designated as "Bessie's." Concededly it is the general rule, as counsel contends, that testimony of a separate and distinct offense may not be introduced. A well-recognized exception to this general rule, however, is where proof of the distinct offense has a direct tendency to prove the intent with which the act was done for which the defendant is on trial. (*People* v. *Cook,* 148 Cal. 334 [83 Pac. 43]; *People* v. *Rat-*

*ledge,* 172 Cal. 401 [156 Pac. 455]; *People* v. *Lopez,* 135 Cal. 23 [66 Pac. 965].) It cannot be gainsaid that proof of intercourse with the girl by the appellant while they were in Los Angeles tended directly to show the intent with which she was enticed from her parents.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.